**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **CLEON ABRAMS, SR.**, *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | )    **CIVIL ACTION 08-0068-WS-B** |
| | ) |
| **CIBA SPECIALTY CHEMICALS** | ) |
| **CORPORATION**, *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter comes before the Court on defendants' Motion for More Definite Statement and to Dismiss (doc. 28) and plaintiffs' Motion for Entry of Default (doc. 38). The Motions have been briefed and are now ripe for disposition.[1]

**I.    Relevant Background.**

This action was brought by 277 alleged owners, residents or users of property in or near

---

[1]    Also pending is Defendants' Motion for Leave to File Reply Brief (doc. 54). Plaintiffs were previously granted leave to file a Sur-Reply (doc. 40) addressing the impact of *Bridge v. Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131 (2008), on the pending motions. Defendants seek to reply to plaintiffs' Sur-Reply on the *Bridge* issue. In its discretion, the Court **grants** that Motion, and will consider the proposed reply filed as Exhibit A to document 54. However, the Court notes that both plaintiffs' and defendants' supplemental filings move well beyond a focused discussion of *Bridge* (which has little impact on defendants' Rule 12(b) Motion given that such Motion did not challenge the reliance issue, to which *Bridge*'s narrow holding was directed) and rehash already-closed briefing on defendants' Motion. Defendants' Sur-Reply even advances brand-new grounds for dismissal of the RICO cause of action that are unrelated to *Bridge*. For example, defendants contend for the first time that the First Amended Complaint fails to explain "what would be the purpose of Defendants' alleged scheme and how the predicate acts would further that purpose." (Doc. 54, Exh. A at 4.) Such newly raised arguments are untimely and impermissible. More generally, to the extent that the parties have utilized their respective sur-replies as a platform for presenting arguments that were or could have been briefed earlier, or that do not specifically address the application of the newly decided *Bridge* decision to this case, they improperly circumvent the Court's briefing schedule and will not be considered. The parties are cautioned that similar abuses in the briefing process in the future may lead to filings being stricken *sua sponte* in their entirety, without leave to refile.

McIntosh, Alabama, alleging their properties have been devalued by contamination emanating from a Ciba-Geigy chemical manufacturing plant owned and operated by defendants.[2]  The claims of six plaintiffs were dismissed without prejudice via Order (doc. 55) entered on August 25, 2008, leaving 271 plaintiffs remaining in these proceedings.

On May 6, 2008, plaintiffs filed a 37-page, 11-count, 100-paragraph First Amended Complaint (doc. 26) alleging that their "properties have been adversely affected because of confirmed DDTr contamination of the Plaintiffs [*sic*] properties and the close proximity of their properties to the CG site."  (Amended Complaint, ¶ 2.)  The Amended Complaint expounds on plaintiffs' theory of liability by further alleging that "beginning in about 1952, solid and liquid wastes were disposed of by CG in several known source areas.  These source areas and the manufacturing processes have been managed in such a way that large amounts of chemicals, commonly known as DDT, DDD, and DDE (collectively DDTr), have impacted the McIntosh community and the homes of plaintiffs. ... The residences contain concentrations of DDTr at levels which pose an unacceptable risk to human health thereby reducing the property values of the community."  (*Id.*, ¶¶ 17-18.)[3]

Plaintiffs would parlay these basic factual allegations into 11 causes of action for each of the 271 remaining plaintiffs against each of the 4 named defendants.  Indeed, the First Amended Complaint purports to assert the following causes of action by each plaintiff against each

---

[2]     The factual allegations and legal theories posited by plaintiffs in this action bear striking similarity to those litigated in a related federal action before the undersigned styled *Jessie Fisher et al. v. Ciba Specialty Chemicals Corporation, et al.*, Civil Action No. 03-0566-WS-B.  After more than four years of extensive litigation (including an unsuccessful bid for class certification), the five *Fisher* plaintiffs reached a settlement with Ciba on October 19, 2007, just two weeks before jury selection was to occur.  The case at bar multiplies the five *Fisher* plaintiffs' numerous legal theories across 277 plaintiffs and four defendants.  The identities of counsel for both sides in this action are substantially similar to those who litigated the *Fisher* matter, and the pleadings in this case appear to have their genesis in the corresponding *Fisher* pleadings, with some being reproduced nearly verbatim.

[3]     Notwithstanding these specific references to DDTr, the First Amended Complaint is replete with generic references to "CG-site related contaminants," "hazardous and toxic substances," and the like.  Because of such vague language, it is unclear whether plaintiffs intend to focus their claims on DDTr contamination, or whether other chemicals are at issue as well.

defendant: negligence, conspiracy, strict liability, trespass, nuisance, intentional misrepresentation, negligent misrepresentation, fraud / fraudulent concealment, constructive fraud, punitive/exemplary damages, and violation of the federal Racketeer Influenced and Corrupt Organizations Act.

In their Motion for More Definite Statement and to Dismiss, defendants proffer three objections to plaintiffs' pleading. First, they contend that the First Amended Complaint is a shotgun-style pleading that violates fundamental pleading requirements identified in the Federal Rules of Civil Procedure and binding appellate precedent. Second, they contend that plaintiffs' fraud and misrepresentation claims lack the requisite particularity required under the Federal Rules of Civil Procedure and must therefore be dismissed. Third, defendants contend that plaintiffs' RICO allegations are inadequately pleaded with respect to proximate cause and predicate acts. Plaintiffs oppose defendants' Rule 12 Motion and fire back with their own Motion for Default contending that defendants should be defaulted for intentionally failing to answer either the Complaint or the First Amended Complaint in a timely manner.

## II.    Defendants' Motion for More Definite Statement.

Defendants first invoke Rule 12(e), Fed.R.Civ.P., and assert that plaintiffs should file a more definite statement. In support of this assertion, defendants balk that the First Amended Complaint is a shotgun pleading that fails to provide sufficient detail concerning each plaintiff's claims. Defendants request amplification of plaintiffs' claims in three respects. First, defendants object that the First Amended Complaint is vague with respect to the contaminants of concern. In that regard, defendants protest that, while plaintiffs' counsel are surely aware of "what chemical is the cause of Plaintiffs' concern and the particular findings on each plaintiff's property ... Plaintiffs' First Amended Complaint leaves the issue open" with vaggue references to "contamination," "chemicals," "contaminants," and the like. (Defendants' Brief (doc. 29), at 4.) According to defendants, "the failure to identify the chemical of concern for each Plaintiff sets the stage for hundreds of hours of wasted discovery time." (*Id.*) Second, defendants object to a stray reference to the phrase "members of the putative class" in paragraph 100 of the First Amended Complaint, even though this action is plainly not a class action. Third, defendants express skepticism that "277 plaintiffs could have exactly the same 11 causes of action against 4 defendants" and request further detail as to the specific claims advanced by specific plaintiffs

against specific defendants.  (*Id.* at 5.)[4]

### A.    Legal Standard.

Both the language of Rule 12(e) and the accompanying case law confirm that requiring a plaintiff to plead a more definite statement is appropriate only in a narrow category of cases. The text of the rule itself demonstrates that its reach is tightly circumscribed, to-wit:

> "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but ***which is so vague or ambiguous that the party cannot reasonably prepare a response***.  The motion ... must point out the defects complained of and the details desired."

Rule 12(e), Fed.R.Civ.P. (emphasis added).

As the formidable standard set forth in Rule 12(e) suggests, "[m]otions for more definite statement are viewed with disfavor and are rarely granted."  *Fathom Exploration, LLC v.*

---

[4]    Plaintiffs urge the Court not to reach the merits of the motion for more definite statement, but instead to deny it summarily as untimely.  In this regard, plaintiffs point to Orders entered on March 11, 2008 and March 20, 2008, requiring defendants to file their "answers or other responsive pleadings ... on or before May 12, 2008."  (Doc. 18, at 2; doc. 22, at 1.) Because a Rule 12(e) motion is not a responsive pleading, plaintiffs argue, defendants did not have permission to file such a motion on May 12, 2008 (nearly three months after the first defendant was served with process on February 19, 2008).  This argument is patently meritless, and fundamentally misreads Rule 12.  The Federal Rules of Civil Procedure are quite clear that the filing of a motion to dismiss or a motion for more definite statement extends the deadline for filing an answer.  *See* Rule 12(a)(4), Fed.R.Civ.P. (explaining that "serving a motion under this rule alters" the responsive-pleading deadline until either 10 days after a motion is denied or ruling is postponed, or 10 days after a more definite statement is served); *see also* C. Wright & A. Miller, 5C *Federal Practice & Procedure Civil 3d* § 1378 ("The pendency of a motion for a more definite statement postpones the movant's obligation to file his responsive pleading."). Plaintiffs' suggestion that this Court's Orders of March 11 and March 20 effectively forebade defendants from filing Rule 12(b) or 12(e) motions after the 20-day cutoff distorts those Orders beyond recognition and is irreconcilable with the plain language of the Federal Rules of Civil Procedure.  The same reasoning dooms plaintiffs' facially baseless suggestion that defendants have "waived" the right to file a Rule 12(e) motion or that they should be "estopped" from doing so because they waited more than two months after service of process before filing such a motion.  Again, defendants requested and received an extension through May 12, 2008 to file an answer or other responsive pleading.  On the precise date of their court-ordered deadline for filing a responsive pleading, defendants filed their Motion under Rules 12(e) and 12(b).  There was nothing improper about this sequence of events, and certainly nothing in defendants' conduct would warrant a finding that principles of waiver or estoppel bar their plainly timely motions.  Plaintiffs' insistence to the contrary is both inscrutable and wholly lacking in merit.

-4-

*Unidentified Shipwrecked Vessel or Vessels*, 352 F. Supp.2d 1218, 1221 (S.D. Ala. 2005).[5] "The motion is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail." *Id.* (citation omitted); *see also S.E.C. v. Digital Lightwave, Inc.*, 196 F.R.D. 698, 700 (M.D. Fla. 2000) (touchstone for Rule 12(e) relief is unintelligibility, not lack of detail). "A motion for more definite statement is not a substitute for discovery." *Fathom*, 352 F. Supp.2d at 1221-22.[6] "[A] motion for a more definite statement must be denied if the complaint attacked thereby, considered as a whole, fairly gives notice of the claim or claims asserted therein so as to permit the filing of a responsive answer." *Herman v. Continental Grain Co.*, 80 F. Supp.2d 1290, 1297 (M.D. Ala. 2000). Indeed, "[a] motion for a more definite statement will only be required when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Fathom*, 352 F. Supp.2d at 1221 (citation omitted); *see also BB In Technology Co. v. JAF, LLC*, 242 F.R.D. 632, 640 (S.D. Fla. 2007) (similar).

More generally, the Eleventh Circuit has made clear that "the threshold of sufficiency to which a complaint is held at the motion-to-dismiss stage is exceedingly low." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 881 (11th Cir. 2003); *see also Evans v. McClain of Georgia, Inc.*,

---

[5]     *See also BB In Technology Co. v. JAF, LLC*, 242 F.R.D. 632, 640 (S.D. Fla. 2007) ("Federal Courts disfavor motions for a more definite statement, in view of the liberal pleading and discovery requirements set forth in the Federal Rules of Civil Procedure."); *Faulk v. Home Oil Co.*, 173 F.R.D. 311, 313 (M.D. Ala. 1997) ("In general, motions for a more definite statement are disfavored under the liberal pleading approach of the Federal Rules."); *Butler v. Matsushita Communication Industrial Corp. of U.S.*, 203 F.R.D. 575, 584 (N.D. Ga. 2001) (noting that class of pleadings for which a Rule 12(e) motion is appropriate is "quite small").

[6]     *See also Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F. Supp.2d 1283, 1291 (S.D. Fla. 2007) ("allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement") (citation omitted); *New Lenox Industries, Inc. v. Fenton*, 510 F. Supp.2d 893, 911 (M.D. Fla. 2007) ("[T]o the extent that the Defendants need to obtain additional information to defend themselves at trial discovery is the avenue to pursue, and not a motion for more definite statement."); *Herman v. Continental Grain Co.*, 80 F. Supp.2d 1290, 1297 (M.D. Ala. 2000) ("A motion for a more definite statement under Rule 12(e) is not to be employed as a substitute for pre-trial discovery proceedings."); *Faulk*, 173 F.R.D. at 313 (denying Rule 12(e) motion where lack of specificity in complaint could be adequately addressed through discovery).

131 F.3d 957, 964 n.2 (11th Cir. 1997) ("A complaint need not specify in detail the precise theory giving rise to recovery.  All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests.") (citation omitted); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983) ("the alleged facts need not be spelled out with exactitude, nor must recovery appear imminent").  The rules do not oblige a plaintiff to plead its claims with maximum specificity.  *See In re Southeast Banking Corp.*, 69 F.3d 1539, 1551 (11th Cir. 1995) ("For better or for worse, the Federal Rules of Civil Procedure do not permit district courts to impose upon plaintiffs the burden to plead with the greatest specificity they can.").  In the words of Justice Powell, "[l]iberal pleading rules have both their merit and their price."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 384, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (Powell, J., concurring).

   ***B.     Discussion.***

   As noted *supra*, Rule 12(e) provides that a request for more definite statement "must point out the defects complained of and the details desired."  Rule 12(e), Fed.R.Civ.P.  Defendants identify only three areas in which they contend the First Amended Complaint is wanting for Rule 12(e) purposes, including: (1) failure to identify contaminant(s) of concern with specificity; (2) a reference to a "putative class"; and (3) failure to state claims in such a manner that "each particular plaintiff is explicitly linked to a particular cause of action and so that the alleged actions of the defendants are sufficiently distinguished."  (Doc. 29, at 5.)  The Court will consider each of these purported defects in turn.

   With respect to the first alleged inadequacy, the First Amended Complaint specifically and repeatedly identifies DDTr as the offending substance that plaintiffs contend Ciba discharged onto their property; however, defendants correctly note that plaintiffs have pleaded their claims in an ambiguous manner leaving a possibility that other contaminants of concern may be named at a later date.[7]  This lack of specificity is entirely permissible under Rule 12(e),

---

   [7]     By way of example, the negligence count of the First Amended Complaint alleges that areas near the Ciba site have been "affected by the contaminants since 1952," that Ciba should have known "that the hazardous and toxic substances discharged ... would eventually enter Plaintiffs' properties," and that plaintiffs' properties "are contaminated by substances from

and defendants cannot reasonably contend that they are unable to frame a responsive pleading to the First Amended Complaint without knowing whether this action relates to any hazardous substances other than DDTr. Simply put, nothing in the liberal pleading standards or the disfavored Rule 12(e) mechanism would obligate a plaintiff to enumerate with precise finality each and every pollutant that the plaintiff contends is contaminating his or her property and for which the defendant is allegedly responsible. That's what discovery is for. Accordingly, the Motion for More Definite Statement is not well taken insofar as defendants seek a final, exhaustive list of contaminants of concern at the pleadings stage.[8]

---

these sites." (Doc. 26, ¶¶ 26, 28, 31.) Through their use of the plural, and the non-specific descriptors of the contamination, plaintiffs apparently would preserve the possibility of litigating contaminants in addition to DDTr in this action. Despite plaintiffs' apparent desire to reserve the right to incorporate other contaminants into this lawsuit, they candidly admit in briefing the Rule 12(e) motion that their sampling data "indicates that Plaintiffs have only analyzed for DDTr." (Doc. 38, at 7-8.) Given this admission, it appears that plaintiffs lack any factual basis for bringing claims against Ciba related to contamination caused by chemicals other than DDTr, because they have not tested their properties for any other contaminants. If plaintiffs have not investigated the presence of any chemicals other than DDTr on their property, then a serious question emerges as to the propriety of their seeking relief in these proceedings on the basis of those other substances.

[8]    That said, the Court is keenly aware of the potential for abuse, inefficiency and unfair surprise if the contaminants' identities remain indeterminate for an indefinite period of time. The Court's experience with this very issue in a related case involving the same plaintiffs' legal team confirms that this risk is of more than merely theoretical concern. In the *Fisher* action, which involved nearly identical claims and attorneys as the case at bar, plaintiffs' counsel filed a motion for class certification that identified four chemicals of concern: DDT, BHC, chlordane and t-nonachlor. Defendants vociferously objected that the inclusion of chlordane and t-nonachlor in the Rule 23 motion "came as a complete surprise to Defendants" because "these compounds were not the subject of discovery by Plaintiff during the two years since this case has been filed, and were never mentioned as alleged contaminants from Ciba by any fact witness or expert." (*Fisher*, 03-0566-WS-B, doc. 347, at 5-6.) Nonetheless, defendants submitted arguments against class certification on the basis of those newly-added chemicals. Then plaintiffs' counsel changed their minds again. As the Court observed, "[l]ess than 24 hours before the Rule 23 hearing, plaintiffs announced their abandonment of the chlordane and t-nonachlor allegations, such that the only chemicals at issue are DDT and BHC." *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 277 n.3 (S.D. Ala. 2006). In light of their track record of, to put it charitably, indecisiveness as to which chemicals formed the basis of their *Fisher* claims, plaintiffs' counsel will not be allowed to subject opposing counsel and this Court to a similar roller coaster ride here as they decide whether to sue Ciba for contamination caused

Next, defendants maintain that a more definite statement is warranted because the First Amended Complaint contains a reference to a putative class. But a full reading of that pleading confirms that plaintiffs are not requesting class certification in this action; rather, there are 271 plaintiffs bringing individual claims against defendants. Inasmuch as the references to "putative class" in paragraph 100 and to "all others similarly situated" in the *ad damnum* clause are clearly attorney drafting errors (most likely attributable to oversights in the adaptation of the *Fisher* pleadings to this lawsuit), those references are **stricken**. No more definite statement of class allegations will be required because this is not a putative class action.

Finally, defendants protest that a more definite statement is necessary because "each Plaintiff should be able to individually indicate the basis for his or her claim against each Defenadant [*sic*]" and "each particular plaintiff [must be] explicitly linked to a particular cause of action." (Doc. 29, at 5.) The Court disagrees that Rule 12(e) relief is appropriate in these circumstances. The First Amended Complaint reasonably alleges the following: (1) each plaintiff is a resident and/or property owner in or near McIntosh, Alabama; (2) defendants are owners/operators at relevant times of the Ciba manufacturing facility near McIntosh; (3) that facility has discharged hazardous chemicals, including DDTr; (4) those chemicals have contaminated plaintiffs' properties and diminished the value of said properties; and (5) defendants are liable for that diminution of property value under a variety of state-law theories. These allegations, taken in the context of the First Amended Complaint as a whole, are more

---

by any substances other than DDTr. Accordingly, plaintiffs are hereby **ordered**, on or before **December 10, 2008**, to file a written notice identifying the particular contaminants for which they contend Ciba is responsible and for which each plaintiff seeks relief in these proceedings. Plaintiffs have had more than five years to conduct testing in the McIntosh area and have already received the benefit of extraordinarily detailed discovery relating to present and historical activities on the Ciba site. Surely plaintiffs can prepare a final list of chemicals within the next 90 days. That submission will be final and binding on the parties, will govern all future proceedings in this action, and will be subject to the requirements of Rule 11(b), Fed.R.Civ.P. Because of the risk of prejudice and undue disruption to these proceedings, as well as plaintiffs' counsel's history of unexplained eleventh-hour vacillation as to contaminants of concern, this notice of hazardous substances for which relief is sought may be amended only with leave of Court upon a showing of exceptional circumstances beyond plaintiffs' control that precluded them from identifying the proposed new chemicals in a timely manner, despite diligence on their part.

than sufficient to give defendants fair notice of the claims each plaintiff is bringing against them so as to permit the filing of a responsive answer. The First Amended Complaint is not so devoid of information concerning the claims each plaintiff is bringing against each defendant as to be unintelligible. Rule 12(e) does not require plaintiffs to provide a plaintiff-by-plaintiff breakdown of specific factual allegations or to provide painstaking detail distinguishing each plaintiff's claims from each other plaintiff's claims. Rather, the rule merely requires plaintiffs to submit a pleading that is not so vague, ambiguous, or unintelligible as to prevent defendants from being able to craft an answer in good faith without prejudice to themselves. This pleading satisfies that low threshold. If defendants wish to delve into the nuances of the facts supporting each particular plaintiff's claims, then the discovery process (not the Rule 12(e) mechanism) is the appropriate vehicle for doing so. *See generally Baxter*, 345 F.3d at 883-84 ("a complaint governed by the ordinary standard of Rule 8 ... need not allege the particulars of each instance of injury in order to survive a motion to dismiss").[9]

---

[9]    In arguing otherwise, defendants rely on the "shotgun pleading" line of Eleventh Circuit authorities, the most recent of which is *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955 (11th Cir. 2008). A shotgun pleading is one which "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief. The general allegations are incorporated by reference into each count of the complaint; the complaint is followed by an answer that responds to each and every statement." *Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998). The ills of shotgun pleading have been thoroughly catalogued by the Eleventh Circuit in a host of opinions on the subject. Perhaps chief among them is the inevitable propagation of unnecessarily broad discovery, with the case proceeding along aimlessly because the inclusion of numerous extraneous and immaterial allegations incorporated into every single claim for relief renders it virtually impossible to delineate reasonable discovery boundaries. *See, e.g., Davis*, 516 F.3d at 981-82; *Byrne v. Nezhat*, 261 F.3d 1075,1129 (11th Cir. 2001); *Johnson Enterprises*, 162 F.3d at 1333. Simply put, then, the problem with a shotgun pleading is that it prevents the parties and the court from understanding what the case is really about because the pleadings are cluttered with irrelevant and unrelated facts. The consequence is that discovery becomes a fool's errand in which parties seek out facts relating to claims whose parameters are so fuzzy, amorphous and ill-defined as to be utterly indeterminate. For example, the *Davis* court condemned a complaint as a shotgun pleading where it alleged race discrimination on the part of eight named plaintiffs in pay raises, benefits, ability to advance, harassment, intimidation and other terms and conditions of employment. As pleaded, this claim was packed with so many permutations of discrimination allegations by each plaintiff, all in conclusory form, that it amounted to "untold causes of action all bunched together in one count" such that no defendant could reasonably determine what

In short, then, applying the stringent standards for this disfavored procedural remedy to the case at bar, the Court finds that defendants are not entitled to a more definite statement. A fair review of the First Amended Complaint reveals that, while it may be imprecise in certain respects, it is not unintelligible. Nothing on the face of the First Amended Complaint supports a finding that its allegations are so vague or ambiguous that defendants are unable to respond, even with a simple denial, in good faith or without prejudice to themselves. Indeed, defendants' own filings in support of their Rule 12(b) Motion reveal that they understand, at least in general terms, the nature of the claims against them. This is simply not a case in which a defendant is unable to respond to an unintelligible pleading; to the contrary, defendants clearly grasp the claims against them well enough to file an answer. Defendants' Rule 12(e) motion is **denied**.

## III.    Defendants' Motion to Dismiss.

The Court now turns to defendants' Rule 12(b)(6) Motion, which asserts that plaintiffs' fraud-related claims should be dismissed for failure to plead fraud with particularity and that plaintiffs' RICO allegations fail to state an actionable claim for relief. Each of these grounds for dismissal shall be addressed in turn.[10]

---

claims were being brought by what plaintiff. *Davis*, 516 F.3d at 980. Similarly, in *Byrne*, the court sharply criticized a 78-page, 299-paragraph complaint for being so vague and ambiguous that the reader was left "to guess at precisely what the plaintiff was claiming." *Byrne*, 261 F.3d at 1128. This paradigm simply is not present here. The First Amended Complaint is not a model pleading by any stretch of the imagination, but it does include just 23 paragraphs of general allegations, with the remaining 77 paragraphs being grouped among the 11 causes of action, providing claim-specific detail of the factual allegations paired with each specific cause of action. More importantly, it is clear from the First Amended Complaint that each of the 271 plaintiffs is alleging that his or her property is contaminated, that such contamination originated from the Ciba facility, and that defendants are legally responsible for it. The reader is not left guessing from the First Amended Complaint as to how each plaintiff was wronged, what defendants are alleged to have done, on what legal theories plaintiffs contend that defendants are liable for those acts and omissions, or how the factual allegations are possibly material to the particular causes of action asserted. This is not a shotgun pleading, and the *Davis* line of authority is inapposite.

[10]    On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."

**A.    *Whether Plaintiffs Have Alleged Fraud/Misrepresentation with Particularity.***

           *1.    The Fraud-Based Allegations of the Complaint.*

       The First Amended Complaint asserts a number of fraud-based claims, including causes of action for intentional misrepresentation (Count Six), negligent misrepresentation (Count Seven), fraud and fraudulent concealment (Count Eight), and constructive fraud (Count Nine). In each of these causes of action, plaintiffs have pleaded misrepresentations or fraudulent conduct by defendants in the most general of terms and only "upon information and belief." For example, the intentional and negligent misrepresentation claims found at Counts Six and Seven include substantively identical allegations as follows:

> "Upon information and belief, Defendants issued, published or otherwise produced numerous reports, studies, informational videos, and/or publicity guides about the CG site and its effect on the surrounding community to government officials and the general public. ... Upon information and belief, Defendants also directly supplied reports, studies, informational videos and/or publicity guides, among other documents, directly to the general public and waged a public education program espousing the alleged lack of health threat posed by the CG site. ... Upon information and belief, such misrepresentations resulted from the intentional and purposeful actions and omissions of the Defendants and/or their

---

*Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *see also Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("In evaluating whether a complaint states a claim upon which relief can be granted, we must accept the well-pleaded allegations of the complaint as true and draw all reasonable inferences therefrom in favor of the complaining party.") (footnote omitted). While a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). In general, the rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974; *see also Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) ("factual allegations in a complaint must possess enough heft to set forth a plausible entitlement to relief") (citation omitted). The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson*, 127 S.Ct. at 2200 (citation omitted). Thus, the proper test is whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Financial Sec.*, 500 F.3d at 1282-83 (citation and internal quotations omitted). Of course, that general test gives way to a higher threshold with respect to defendants' contention that plaintiffs failed to plead fraud with particularity, but otherwise the *Financial Sec.* standard governs.

servants and agents."

(First Amended Complaint (doc. 26), ¶¶ 53, 57, 58, 63, 67, 68.)

The fraudulent concealment cause of action asserted as Count Eight and the constructive fraud cause of action set forth as Count Nine are equally vague, asserting that "Upon information and belief, the Defendants knew that the misrepresentations and statements made to the government officials and the general public were false when disclosed or published as stated herein."  (*Id.*, ¶¶ 74, 81.)  Those counts fail to identify the content of any such misrepresentations or statements, who made them, when they were made, or the like.

According to the First Amended Complaint, the consequence of the alleged misrepresentations by Ciba was that plaintiffs "relied on the representations and statements of the Defendants and their agents and servants about the safety of the CG site and its potential impact on the surrounding community and thereby were induced to their detriment into remaining within the surrounding community."  (*Id.*, ¶¶ 60, 69, 76, 83.)  Thus, the gravamen of plaintiffs' misrepresentation claims is that defendants misled all 271 plaintiffs into believing that the Ciba plant was safe for the surrounding community, thereby inducing plaintiffs into remaining on their property in close proximity to that facility.[11]

2.      *The Rule 9(b) Heightened Pleading Standard.*

The Federal Rules of Civil Procedure provide that "[i]n alleging fraud or mistake, a party

---

[11]      Plaintiffs' counsel unsuccessfully advanced a similar theory in the *Fisher* litigation. Four *Fisher* plaintiffs' fraud claims were dismissed at the summary judgment stage for failure to make any showing of reasonable reliance.  In particular, two *Fisher* plaintiffs "unequivocally denied awareness of any statements made by anyone who worked for or was affiliated with Ciba regarding any of the events at issue in this litigation," while the other two plaintiffs testified in their depositions that they "had no interest in leaving their community even after suing Ciba for contaminating their property and making false representations to them concerning such contamination ... [such that] they were not coaxed into remaining in the community by those alleged misrepresentations."  *Fisher v. Ciba Specialty Chemicals Corp.*, 2007 WL 2995525, *12-13 & n.26 (S.D. Ala. Oct. 11, 2007).  The failure of the bellwether plaintiffs in *Fisher* to demonstrate reasonable reliance (given their lack of knowledge of the misrepresentations and their unwillingness to consider relocating even after learning the truth) suggests that this strained theory of liability might pose intractable problems of proof for many of the 271 plaintiffs whose interests plaintiffs' counsel represent this time around, even if it survived Rule 9(b) scrutiny.  Of course, the Court does not reach those proof questions today.

-12-

must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed.R.Civ.P. This heightened pleading rule "serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370-71 (11th Cir. 1997) (citations omitted); *see also U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (same); *In re Eagle Bldg. Technologies, Inc., Securities Litigation*, 221 F.R.D. 582, 585 (S.D. Fla. 2004) ("The purpose of Rule 9(b) is to ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of and to eliminate those complaints filed as a pretext for discovery of unknown wrongs.") (citations omitted).[12] "The particularity requirement of Rule 9 is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim." *McInteer*, 470 F.3d at 1359 (citation omitted).

Under well established law, Rule 9(b) is satisfied if the Complaint sets forth the following: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (citations omitted); *see also Hill v. Morehouse Medical Associates, Inc.*, 2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) (noting that "plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them"); *Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 568 (11th

---

[12]    That said, the requirements of Rule 9(b) must be harmonized with Rule 8, which directs that a complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief" and that averments of the complaint should "be simple, concise, and direct." Rule 8(a)(2),(d)(1); *see also Brooks*, 116 F.3d at 1371 (recognizing necessity of reading Rule 9(b) together with Rule 8); *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985) ("[A] court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directives of Rule 9(b) with the broader policy of notice pleading.").

Cir. 1994) ("The plaintiff's complaint must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them."). The Eleventh Circuit has routinely endorsed dismissal of pleadings that fail to meet these exacting standards. *See, e.g., American United Life Ins. Co. v. Martinez*, 480 F.3d 1043 (11th Cir. 2007) (affirming dismissal of fraud claims where plaintiff "presented only general conclusory allegations of fraud ... [that] do not conform to the heightened pleading requirements for fraud claims"); *McInteer*, 470 F.3d at 1360 (explaining that Rule 9(b) required district court to dismiss complaint where pleading lacked sufficient indicia of reliability to haul defendants into court); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005) ("Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint."); *Hendley v. American Nat'l Fire Ins. Co.*, 842 F.2d 267, 269 (11th Cir. 1988) (dismissal proper under Rule 9(b) where plaintiff "steadfastly refused to offer specifics" and "never earmarked any facts as demonstrative of fraud").

3.    *Application of Rule 9(b) Standard to Plaintiffs' Allegations.*

It is readily apparent from the face of the First Amended Complaint that this pleading does not satisfy the Rule 9(b) heightened pleading standard. Indeed, plaintiffs' fraud-related counts do not identify who made the fraudulent statements, to whom they were made, what misrepresentations were made, when this conduct occurred, or the like. Instead, plaintiffs have pleaded fraud and misrepresentation in exceedingly general terms via references to production of unspecified reports, studies, videos and publicity guides to government officials and the general public, without any indication as to the contents or timing of same, and all subject to the conspicuous "upon information and belief" disclaimer/caveat. Such averments clearly fall well shy of the strictures of Rule 9(b) as interpreted by the Eleventh Circuit.

In response to defendants' Rule 9(b) argument, plaintiffs do not even attempt to argue that the First Amended Complaint comports with the conventional particularity requirement of Rule 9(b).[13] Rather, plaintiffs invoke the "relaxed" version of Rule 9(b), based on their assertion

---

[13]    At most, plaintiffs allege in their First Amended Complaint that a representative of the U.S. Fish and Wildlife Service named Peter Tuttle stated at a June 2003 town meeting "that the companies have representatives who would have the community believe that the cleanup of the plant site is almost finished." (First Amended Complaint, ¶¶ 54, 64.) Plaintiffs further allege that a government representative named Jim Norris "utilized information provided

in the First Amended Complaint that "[t]he information regarding Defendants' misrepresentations and omissions lies exclusively within the Defendants' control in the form of internal documents within the Defendants' community relations department and/or other departments. ... Only Defendants would have information that forms the basis for Defendants' omissions of fact." (First Amended Complaint, ¶¶ 58, 68.)

It is true that the Rule 9(b) standard is not universal and inflexible, but may be satisfied through "alternative means." *Brooks*, 116 F.3d at 1371. In particular, Rule 9(b) "may be applied less stringently ... when specific factual information about the fraud is peculiarly within the defendant's knowledge or control." *Hill*, 2003 WL 22019936, at *3 (citations omitted); *see also United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir.1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed...."); *see generally Baxter*, 345 F.3d at 881 ("Courts typically allow the pleader an extra modicum of leeway where the information supporting the complainant's case is under the exclusive control of the defendant."). "The relaxed requirement is applied where strict application of Rule 9(b) could result in substantial unfairness to private litigants who could not possibly have detailed knowledge of all circumstances surrounding the alleged fraud." *U.S. ex rel. Butler v. Magellan Health Services, Inc.*, 74 F. Supp.2d 1201, 1215 (M.D. Fla. 1999). Nonetheless, even under the "relaxed" incarnation of Rule 9(b), "[s]ome further level of precision, other than a blunderbuss allegation, is necessary." *Morrow v. Green Tree Servicing, L.L.C.*, 360 F. Supp.2d 1246, 1250 (M.D. Ala. 2005). To qualify for the relaxed Rule 9(b) standard, a complaint must still (1) "adduce specific

---

by the companies to the government to update the citizens regarding the cleanup efforts at the site." (*Id.*) But the First Amended Complaint does not allege that Tuttle's or Norris's statements were false, much less that they were the product of false information provided by defendants. Mere vague references to statements by Tuttle or Norris (neither of whom is alleged to be defendants' agent or employee) at a 2003 town meeting fall far short of satisfying the particularity obligations imposed by Rule 9(b), especially in the absence of any allegation that those statements somehow deceived plaintiffs into being unaware of the presence of DDTr contamination and remaining on their property. Simply put, the statements attributed to Tuttle and Norris appear to have nothing to do with the injuries that form the basis of plaintiffs' claims (to-wit, that their properties are contaminated with DDTr and that plaintiffs were lulled by Ciba's lies concerning such contamination into remaining on their property).

facts supporting a strong inference of fraud," (2) "allege that the necessary information lies within the defendant's control" and (3) provide a statement of facts upon which allegations of defendants' superior information are based. *Peters v. Amoco Oil Co.*, 57 F. Supp.2d 1268, 1280 (M.D. Ala. 1999) (citations omitted); *see also Clausen*, 290 F.3d at 1314 n.25 (recognizing that "a more lenient pleading standard" is appropriate under Rule 9(b) when "evidence of fraud [i]s uniquely held by the defendant" provided that "the complaint ... set[s] forth a factual basis for such belief"). The *Peters* line of authority has emerged from judicial recognition that, where a defendant possesses in its exclusive control all information regarding fraudulent activity, a plaintiff should be permitted an opportunity to extract such information through discovery, rather than having his or her complaint summarily rebuffed for failure to meet a pleading standard that cannot reasonably be satisfied using then-available information.

In the unique circumstances of this case, plaintiffs' invocation of the relaxed Rule 9(b) standard is inappropriate and unavailing. Simply stated, plaintiffs' "exclusive control" allegation is obviously inaccurate.[14] As discussed *supra*, this case follows on the heels of the resolution of related litigation styled *Jessie Fisher et al. v. Ciba Specialty Chemicals Corporation, et al.*, Civil Action No. 03-0566-WS-B, and involving the same defendants and virtually identical facts, claims and attorneys as the case at bar. The *Fisher* plaintiffs (on behalf of themselves and all others similarly situated, in a putative class action) brought claims against Ciba for intentional misrepresentation, negligent misrepresentation, fraud and fraudulent concealment, and constructive fraud. The *Fisher* fraud claims bear uncanny resemblance to those very causes of

---

[14]    For purposes of a Rule 12(b)(6) motion, "[t]he plaintiff's factual allegations are accepted as true. ... However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Next Century Communications Corp. v. Ellis*, 318 F.3d 1023, 1025 (11th Cir. 2003); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true."). The Court is therefore not obliged to pretend that five years of litigation history in *Fisher* did not happen and to accept at face value plaintiffs' conclusory allegation that all information relating to their fraud claims is in defendants' exclusive control when the Court knows that not to be so.

action interposed by the 271 plaintiffs against Ciba in the case at bar.[15]  Plaintiffs litigated these fraud/misrepresentation claims extensively in *Fisher*, all the way through summary judgment. Discovery in *Fisher* spanned a period of approximately three years, during which time defendants produced more than 1 million documents to plaintiffs' counsel concerning the *Fisher* claims, which would obviously encompass the fraud/misrepresentation causes of action.  There were also numerous comprehensive depositions of company and third-party witnesses relating to the alleged fraud.  Having had extensive access to Ciba's internal files and Ciba witnesses during a three-year discovery period in *Fisher*, including discovery relating to fraud claims that are identical to those alleged in the case at bar, plaintiffs' counsel cannot reasonably contend that "[t]he information regarding Defendants' misrepresentations or omissions lies exclusively within the Defendants' control in the form of internal documents within the Defendants' community relations department and/or other departments."  (First Amended Complaint, ¶¶ 58, 68.)  Those "internal documents" were discoverable and were discovered in *Fisher*.[16]  Accordingly, given the events of *Fisher*, it is pellucidly clear that the information regarding defendants' alleged misrepresentations and omissions does not lie exclusively within defendants' control, given that plaintiffs' attorneys have had the benefit of years of discovery in *Fisher* to ferret out that precise information in connection with indistinguishable claims brought by plaintiffs similarly situated

---

[15]    A line-by-line comparison of paragraphs 52 through 85 of the First Amended Complaint in this action with paragraphs 105 through 138 of the Amended Complaint in *Fisher* reveals that all four causes of action are set forth almost verbatim in the two cases.  For example, a side-by-side reading of the intentional misrepresentation count in this case and its counterpart in *Fisher* reveals a difference of merely a handful of words in the text of the two claims.  They are substantially identical.

[16]    Tellingly, in briefing the Motion to Dismiss, plaintiffs wholly disregard defendants' argument that *Fisher* discovery belies plaintiffs' assertion that the information pertaining to their fraud claims rests exclusively in Ciba's control.  Despite an opportunity to do so in their briefs, plaintiffs' counsel do not offer any basis for concluding that the information relating to the misrepresentations alleged in the First Amended Complaint was not discoverable and, indeed, actually produced to them in litigating identical fraud claims in *Fisher*.  Thus, rather than presenting any facts or arguments that might corroborate their conclusory "exclusive control" statements, plaintiffs have chosen to say nothing at all.

to the 271 plaintiffs in this action.  The relaxed Rule 9(b) standard has no application here.[17]

Inasmuch as plaintiffs have failed to satisfy the heightened pleading requirements of Rule 9(b), defendants' Motion to Dismiss is due to be, and the same hereby is, **granted** with respect to Counts Six (intentional misrepresentation), Seven (negligent misrepresentation), and Eight (fraud and fraudulent concealment).  Those causes of action are all **dismissed**.[18]

Plaintiffs assert that the constructive fraud claim set forth in Count Nine of the First Amended Complaint is not subject to Rule 9(b) heightened pleading standards.  For whatever reason, defendants did not undertake to respond to or rebut that assertion in any fashion in their reply brief.  The Court will not perform the movants' research for them, nor articulate arguments that they have never raised.  Accordingly, given defendants' failure to respond to plaintiffs' contention that Rule 9(b) does not apply to constructive fraud allegations, the Motion to Dismiss is **denied** with respect to Count Nine.[19]

---

[17]     More generally, the Court will not allow plaintiffs' counsel to evade their pleading obligations under the Federal Rules of Civil Procedure via the wholesale cutting and pasting of allegations from a complaint filed in a related matter more than four years ago, without modifying those allegations to account for the extensive information plaintiffs' counsel received in the interim through the discovery process.

[18]     The Court recognizes the existence of authority for the proposition that failure to satisfy Rule 9(b) pleading requirements may not warrant dismissal without first giving a plaintiff an opportunity to seek leave to amend.  *See, e.g., Cates v. International Tel. and Tel. Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend").  In this Circuit, however, a "district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."  *Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002).  No such request having been made here by plaintiffs' counsel, the Court will not *sua sponte* invite plaintiffs to replead their fraud and misrepresentation causes of action.

[19]     Moreover, the Court recognizes that there is a split of authority on the question of whether heightened pleading applies to constructive fraud claims.  *Compare 3D Global Solutions, Inc. v. MVM, Inc.*, 552 F. Supp.2d 1, 8 (D.D.C. 2008) (dismissing constructive fraud claim for failure to satisfy particularity requirements of Rule 9(b)); *Qwest Communication v. Herakles, LLC*, 2008 WL 3864620, *3 (E.D. Cal. Aug. 19, 2008) ("While there has been some discussion between the parties regarding the appropriate pleading standard for constructive fraud, this Court reiterates that [plaintiff] must meet Rule 9(b)'s particularity requirements for pleading fraud."); *Durden v. Citicorp Trust Bank, FSB*, 2008 WL 2098040, *6 (M.D. Fla. May

**B.      Whether Plaintiffs Have Stated a Claim for Violation of RICO.**

The Eleventh Count of the First Amended Complaint purports to state a cause of action against defendants for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et al.* ("RICO").  Defendants seek dismissal of this claim on the following grounds: (i) failure to plead fraud with particularity; (ii) failure to plead causation; and (iii) failure to plead two predicate acts of mail or wire fraud.

**1.      Plaintiffs' Civil RICO Cause of Action.**

Plaintiffs devote more than 10 pages of their 37-page First Amended Complaint to their RICO cause of action.  To summarize, plaintiffs contend that three defendants (Ciba Specialty Chemicals Corporation, Ciba Geigy Corporation and Novartis Corporation) conspired with nonparties Olin Corporation and Arch Chemicals, Inc., as well as all of those companies' respective environmental contractors, to engage in "common schemes to defraud governmental agencies and the public at large to derive great economic benefit."  (First Amended Complaint, ¶ 90.)  Plaintiffs further allege that representatives of defendants, Arch and Olin met in a motel in 1993 to conspire to manipulate data from their respective environmental risk assessments and to form a "covenant" to defraud the public and governmental entities.  (*Id.*, ¶ 91.)  According to plaintiffs, this conspiracy was designed to defraud governmental agencies and the public regarding the presence and degree of contamination in the area by harmonizing the conspirators' activities and coordinating their messages.  The First Amended Complaint repeatedly alleges that defendants and their co-conspirators utilized the telephone, facsimile transmissions, and electronic mail to correspond with each other and to submit deceptive communications to the

---

16, 2008) (rejecting argument that constructive fraud claims are not subject to Rule 9(b)); *Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC*, 2007 WL 2122638, *9 (N.D. Cal. July 23, 2007) ("facts supporting a claim for constructive fraud must be alleged with particularity under Rule 9(b)") *with In re Allou Distributors, Inc.*, 387 B.R. 365, 386 (Bankr. E.D.N.Y. 2008) ("The particularity requirement of Rule 9(b) applies only if actual, as opposed to constructive, fraud is alleged."); *Cendant Corp. v. Shelton*, 474 F. Supp.2d 377, 380 (D. Conn. 2007) ("Courts have not applied Rule 9(b) to claims of constructive, rather than actual, fraud."); *Rosales v. AT & T Information Systems, Inc.*, 702 F. Supp. 1489, 1498 (D. Colo. 1988) (adopting position that Rule 9(b) is inapplicable to constructive fraud claims).  The lack of a clear consensus in the case law confirms that this issue demands full, thoughtful briefing by the parties.  Defendants' abdication of that process warrants deciding the issue adversely to them at this time.

government in furtherance of their scheme, and provides several specific examples (including documents appended as exhibits to the pleadings) of same. (*Id.*, ¶¶ 90-100.)

The First Amended Complaint alleges that the result of this scheme was that Ciba, Olin and Arch, "through machinations devised to convince governmental agencies and the community to delay and/or 'do nothing' about these contaminated areas, have saved ... millions upon millions of dollars to the detriment of the public and interstate commerce. ... As a result, the clean up of the contamination from these Superfund sites has been delayed and the contamination continues to proliferate into the community. Property values are adversely affected and residents in the surrounding communities are unnecessarily subject to increased health risks from contaminants from these sites." (*Id.*, ¶ 100.)

2.    *Sufficiency of Plaintiffs' RICO Pleading.*

The law of the Eleventh Circuit is that to state a claim under civil RICO, a plaintiff must allege each of the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1311 (11th Cir. 2000); *see also Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1292 (11th Cir. 2006) (same). Where, as here, a plaintiff seeks to advance a RICO claim predicated on mail and wire fraud, the Eleventh Circuit delineated the elements that the plaintiff must prove as follows: "(1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages." *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1360-61 (11th Cir. 2002) (footnotes omitted). The reliance components of the *Sikes* test were abrogated by the Supreme Court's recent decision in *Bridge v. Phoenix Bond & Indem. Co.*, --- U.S. ----, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).[20] In light of *Bridge*, the reliance aspects of the *Sikes* standard are no

---

[20]    In *Bridge,* the Court expressly rejected the notion that "reliance by the plaintiff is an element of a civil RICO claim predicated on a violation of the mail fraud statute." 128 S.Ct. at 2141. The *Bridge* Court succinctly held "that a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing

longer good law, but the remainder of that standard remains in effect.

Defendants first assert in general terms that plaintiffs' RICO claim must be dismissed for failure to plead fraud with particularity. The law is quite clear that Rule 9(b) applies to civil RICO claims of the type asserted by plaintiffs here. Indeed, the Eleventh Circuit has opined "that the District Court was certainly correct to apply Rule 9(b) to plaintiff's RICO claim predicated on a pattern of mail and wire fraud offenses." *West Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 2008 WL 2845215, *3 (11th Cir. July 24, 2008); *see also Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity."). "To satisfy the Rule 9(b) standard, RICO complaints must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Ambrosia Coal*, 482 F.3d at 1316-17.[21] A fair reading of Count Eleven of the First Amended Complaint reflects that plaintiffs have sufficiently alleged each of these elements. References are made to precise statements and documents and the persons responsible for same. Plaintiffs contend that defendants' scheme misled them and the general public into believing that no cleanup was necessary, and resulted in inordinate financial gain to Ciba through avoidance of cleanup costs. Defendants fail to explain how they believe these RICO allegations run afoul of the Rule 9(b) standard as applied by the Eleventh Circuit in *Ambrosia Coal*, and the Court will not take it upon itself to develop and examine arguments that defendants have presented in only the broadest and most generic outline form.[22]

---

proximate causation, that it relied on the defendant's alleged misrepresentations." *Id.* at 2145.

[21] This Court has no occasion at this time to evaluate the impact (if any) of *Bridge* on the Rule 9(b) standard enunciated in *Ambrosia Coal* for RICO claims predicated on mail or wire fraud.

[22] Other courts have treated similarly non-specific attacks on the sufficiency of a RICO claim in the same manner. In *Hope for Families & Community Service, Inc. v. Warren*, 2008 WL 630469, *9 (M.D. Ala. Mar. 5, 2008), the defendant challenged the plaintiff's RICO allegations under Rule 9(b). However, the district court rejected this contention on the grounds

Second, defendants balk that the RICO allegations in Count Eleven fail adequately to plead causation. It is well established that a RICO plaintiff must show "a direct relation between the injury asserted and the injurious conduct alleged," and that "the alleged injury was directly caused by the RICO violation." *Green Leaf Nursery v. E.I. DuPont de Nemours and Co.*, 341 F.3d 1292, 1307-08 (11th Cir. 2003) (citations omitted). "[W]hen a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Williams*, 465 F.3d at 1287 (citation omitted). Simply put, "in RICO cases there must be some direct relation between the injury alleged and the injurious conduct in order to show proximate cause." *Id.* at 1288 (citation omitted); *see also Blackburn v. Calhoun*, 2008 WL 850191, *6 (N.D. Ala. Mar. 4, 2008) (RICO plaintiff must "plead that one has suffered an injury proximately caused by the predicate acts underlying the RICO claim"). The Eleventh Circuit has directed district courts to "scrutinize proximate causation at the pleading stage and carefully evaluate whether the injury pled was proximately caused by the claimed RICO violations." *Williams*, 465 F.3d at 1287.

"A plaintiff asserting a claim under 18 U.S.C. § 1964(c) must allege *actual*, quantifiable injury." *McLaughlin v. American Tobacco Co.*, 522 F.3d 215, 227 (2nd Cir. 2008). Plaintiffs in this case have done so. The injury pleaded in their RICO cause of action is as follows: (i) "clean up of the contamination from these Superfund sites has been delayed," as a result of which "the contamination continues to proliferate into the community"; and (ii) "[p]roperty values are adversely affected" by the proliferation of contamination. (First Amended Complaint, ¶ 100.)[23]

---

that the defendant's Rule 9(b) argument failed to specify any particular allegations that were insufficient to show any particular element. The court reasoned as follows: "The court refuses to make arguments or otherwise litigate the case for the defendants." *Id.* The same is true here.

[23] The First Amended Complaint also alleges that "residents in the surrounding communities are unnecessarily subjected to increased health risks from contaminants from these sites." (*Id.*) Plaintiffs seize on this language in briefing the Rule 12(b)(6) motion, as they protest that "Plaintiffs are exposed daily to the health-hazardous pollution on their properties and surrounding areas." (Plaintiffs' Brief (doc. 38), at 18.) But health risks are not compensable injuries under RICO. *See, e.g., See* 18 U.S.C. § 1964(c) (extending right to bring civil action to "[a]ny person injured in his business or property" by a RICO violation); *Pilkington v. United Airlines*, 112 F.3d 1532, 1536 (11th Cir. 1997); *Petty v. Merck and Co.*, 2008 WL 2884520, *1 (5th Cir. July 28, 2008) ("there is no recovery under RICO for personal injuries"); *Gilmor v.*

Simply put, then, the gravamen of plaintiffs' RICO claim is that defendants and others engaged in wire and mail fraud in furtherance of a conspiracy to deceive the general public and plaintiffs specifically concerning the contamination at defendants' and Olin's facilities, thereby delaying cleanup efforts and allowing those contaminants to remain onsite and to migrate onto plaintiffs' properties, resulting in the diminution of plaintiffs' property values. Thus, plaintiffs' theory advanced in the First Amended Complaint is that defendants' RICO violation effectively delayed cleanup of the Olin and Ciba sites, and that those delays allowed contamination to continue to seep onto plaintiffs' properties and thereby injure them by impairing their property values. Such allegations are legally sufficient to satisfy RICO's direct causation requirement, and to support a conclusion that the alleged RICO violation led directly to plaintiffs' injuries.[24] Therefore,

_____

*Thomas*, 490 F.3d 791, 797 (10th Cir. 2007) ("a plaintiff has standing to bring a RICO claim only if he was injured in his business or property by reason of the defendant's violation") (citation omitted). Clearly, then, plaintiffs' RICO claim is not cognizable to the extent they claim injury in the form of health risks by exposure to contaminants. Recognizing as much, plaintiffs specifically disclaim any intent to seek damages for personal injury in their RICO cause of action. (First Amended Complaint, at 36.) The Court will not permit plaintiffs to sneak in backdoor arguments that their RICO claims allow them to recover for their daily exposure to health-hazardous pollution on their properties. Such allegations have no place in Count Eleven because elevated health risk from chemical exposure is <u>not</u> a compensable injury under RICO and does not constitute a basis for relief in that claim. In the interests of clarity and to foreclose future waffling by plaintiffs in prosecuting this action, plaintiffs' RICO cause of action is **dismissed** to the extent it seeks relief for plaintiffs' exposure to increased health risks.

[24] That said, plaintiffs' RICO claim would stand on a very different footing vis a vis the causation requirements described in the *Williams* line of precedents were it not for the "contamination continues to proliferate into the community" allegation in paragraph 100. That allegation links defendants' racketeering activity to plaintiffs' property damage. Without such a link, the contamination of plaintiffs' properties (*i.e.*, the injury to property that animates their RICO cause of action) would have been complete without regard to defendants' cover-up activities in the 1980s and 1990s, such that the alleged RICO violations could not have caused injury to property. Contrary to plaintiffs' position, plaintiffs' alleged unawareness of DDTr contamination to their property does not amount to a separate, cognizable injury <u>to property</u> under RICO. The injury to plaintiffs' property is the alleged contamination. Unless plaintiffs' evidence at trial establishes that defendants' alleged racketeering activities led directly to there being contamination on plaintiffs' properties that would not have been there in the absence of such racketeering activities, their RICO claims will fail. Accordingly, the Court will closely scrutinize the evidence at the Rule 56 and trial stages for evidence of such causation, and will revisit the viability of plaintiffs' RICO theory if plaintiffs fail to show via competent evidence

-23-

defendants' Motion to Dismiss is not well taken as to the causation aspect of Count Eleven.[25]

Third and finally, defendants argue that the RICO cause of action fails to state a claim because it does not identify two predicate acts by defendants, as opposed to predicate acts perpetrated by other conspirators involved in the fraudulent scheme.[26]  A plaintiff in a civil RICO action must "identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a 10 year period." *Langford*, 231 F.3d at 1311-12.  Courts in this circuit have held, and the parties do not contest, that the "pattern of racketeering" element obligates a plaintiff to allege sufficient facts to support at least two

_____

that "contamination continued to proliferate into the community," contaminating plaintiffs' properties, even as Ciba engaged in the alleged pattern of coordinated deception and misinformation that underlies plaintiffs' RICO claim.

[25]    The parties' briefing on the causation issue strays substantially from the four corners of the First Amended Complaint.  Defendants insist that causation is absent because "the alleged injury (contaminated property) occurred years before the alleged scheme (allegedly hiding the details about the contamination that had already occurred)."  (Defendants' Brief (doc. 29), at 9-10.)  But that's not what the First Amended Complaint says.  The pleading alleges that "the contamination continues to proliferate into the community" at this time (doc. 26, ¶ 100).  By the plain language of the First Amended Complaint, then, the contamination to plaintiffs' property was not a discrete occurrence happening many years ago, as defendants would have the Court conclude, but is an ongoing process continuing to happen today.  The Court will not rewrite the First Amended Complaint to excise inconvenient factual allegations that fatally contradict the theory animating defendants' Rule 12(b)(6) motion.  Additionally, the Court well recalls the plaintiffs' expert testimony in *Fisher* concerning the persistence of DDTr and its susceptibility to dispersal and redistribution in the community via surface water, groundwater, air and "drag out" pathways years after the fact.  *See generally Fisher*, 238 F.R.D. at 290-91 (summarizing opinions of plaintiffs' environmental engineer, Marco Kaltofen, relating to pathways of DDTr contamination from Ciba site).  The scope and extent of such evidence may prove crucial to the viability of the RICO claims with respect to causation.

[26]    In support of the proposition that predicate acts must be committed by a defendant, rather than some other participant in the racketeering activity, defendants cite but a single authority in the form of a 1992 district court opinion from the Eastern District of New York.  *See United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc.*, 793 F. Supp. 1114, 1128-29 (E.D.N.Y. 1992).  Despite defendants' meager citations on this point, plaintiffs do not challenge this formulation and do not dispute that they must show two predicate acts by <u>defendants</u> in order to establish RICO liability.  In light of this concession by plaintiffs, the Court assumes, without deciding, that at least two predicate acts must be committed by defendants themselves before RICO liability may be visited upon them.

predicate acts.  *See Williams*, 465 F.3d at 1283 ("A pattern of racketeering activity, for purposes of the RICO Act, requires at least two acts of racketeering activity.") (citation omitted); *Green Leaf*, 341 F.3d at 1306 ("Plaintiffs in a civil RICO action must identify and prove a pattern of racketeering activity, which is defined as two predicate acts of racketeering activity within a ten-year period."); *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997) (in order to withstand a motion to dismiss, a RICO "plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts").  Civil RICO claims "cannot be maintained if the underlying predicate acts lack legal validity.  And, absent any valid predicate acts, the [plaintiffs] cannot state a claim for RICO violations."  *American United*, 480 F.3d at 1068.

The only "racketeering activity" identified in the First Amended Complaint is mail and wire fraud, prohibited by 18 U.S.C. §§ 1341 and 1343.  "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme."  *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991); *see also Bridge*, 128 S.Ct. at 2138 (similar).  "Under the mail fraud statute, a plaintiff must allege a scheme to defraud where some type of deceptive conduct occurred."  *American United*, 480 F.3d at 1065 (citation omitted) (affirming dismissal of civil RICO claim where plaintiff failed to allege either affirmative misrepresentations or, to the extent claim was predicated on fraudulent concealment or nondisclosure, that defendants had a duty to disclose).  "The gravamen of the offense is the scheme to defraud, and any mailing that is incident to an essential part of the scheme satisfies the mailing element."  *Bridge*, 128 S.Ct. at 2138.  Therefore, in order to pass muster on Rule 12(b)(6) review, a RICO claim predicated on mail or wire fraud must allege specific facts to show that defendants participated in a scheme to defraud others of money or property, and that on at least two occasions they used the mails or wires in furtherance of that scheme.

On its face, the First Amended Complaint recites two predicate acts of mail fraud committed by Ciba.  In particular, the First Amended Complaint references a letter from Scott Tew of Ciba to Jim Brown of Olin dated February 17, 1993 in which Ciba requested copies of Olin's environmental risk assessments and indicated Ciba's intent to share a copy of its environmental assessment with Olin in the next few days.  (First Amended Complaint, ¶ 93, and

-25-

Exh. D to doc. 1.)  Defendants cannot and do not maintain that the February 1993 Tew letter has not been sufficiently alleged to be a predicate act of mail fraud.  The RICO cause of action also includes allegations that in August 1988, a Ciba representative named Sherman Williams sent a letter to a company called BCM Converse, Inc. indicating that the consultant who prepared an April 1988 draft endangerment assessment report would be fired because Ciba disagreed with that report and hiring another contractor, presumably to prepare an assessment more to Ciba's liking.  (*Id.*, ¶ 99 and Exh. K to doc. 1.)  Defendants say that the Williams letter could not amount to a RICO predicate act because it was dated in 1988, more than five years before the racketeering scheme was devised in the first place.  This argument is meritless.  Nowhere does the First Amended Complaint identify a 1993 start date for the alleged conspiracy to defraud; rather, defendants simply <u>assume</u> that the scheme was hatched in 1993.  Such assumptions are not an appropriate basis for Rule 12(b)(6) relief, or for disqualifying the predicate act alleged in paragraph 99 of the First Amended Complaint.  Whatever the ultimate facts may be, the 1988 Sherman letter has been properly pleaded in satisfaction of the predicate act requirement for a RICO violation.

**IV.    Plaintiffs' Motion for Default.**

In responding to defendants' Motion for More Definite Statement and to Dismiss, plaintiffs go on the offensive by interposing their own dispositive motion in the form of a Motion for Default.  Plaintiffs argue that defendants' delay in filing their responsive pleading rises to the level of default pursuant to Rule 55, Fed.R.Civ.P.

To review the relevant procedural history, plaintiffs filed their Complaint (doc. 1) back on February 6, 2008, and perfected service of process on defendants later that month.  On March 11, 2008, defendants timely requested a 60-day enlargement of time for filing a responsive pleading "to enable the parties to continue their dialogue with respect to the issues raised by this lawsuit prior to embarking on lengthy and costly litigation."  (Doc. 17, at 1.)  The Court granted that request, such that defendants' responsive pleadings became due on or before May 12, 2008. (*See* doc. 18.)  On that court-established deadline, defendants filed their motion to dismiss and for more definite statement pursuant to Rules 12(b)(6) and 12(e).

The Federal Rules of Civil Procedure provide that a default is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise

defend." Rule 55(a), Fed.R.Civ.P. Nothing in the circumstances of this case suggests that defendants have failed to plead or otherwise defend this action. They timely requested and received an extension of time to file a responsive pleading and, upon expiration of that extension, timely filed a motion to dismiss or for more definite statement. Default is patently inappropriate where, as here, defendants have been responsive and demonstrated their willingness to defend the claims joined against them. In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Capitol Records v. Carmichael*, 508 F. Supp.2d 1079, 1082 (S.D. Ala. 2007) (same); *Marschauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 610 (S.D. Fla. 1992) ("The law does not favor defaults, and any doubts as to whether a party is in default should be decided in favor of the defaulting party.") (citations omitted). This is simply not a case in which defendants "failed to defend the claims against them following proper service of process." *Capitol Records*, 508 F. Supp.2d at 1082. Plaintiffs' ill-conceived, legally unsupported request for default identifies no basis for overcoming this strong policy of deciding cases on their merits.

The subtext to the Motion for Default is plaintiffs' contention that defendants misrepresented to the Court the purpose of the extension by stating that the 60-day period was needed to promote settlement negotiations, then failing and refusing to engage in any meaningful discussions with plaintiffs during that interval. Defendants dispute plaintiffs' account of how that 60-day period was spent. Short of conducting an evidentiary hearing with counsel for both sides on the witness stand offering sworn testimony as to what transpired, the Court knows of no way to resolve this factual dispute. But it is unnecessary to expend scarce judicial resources on such a collateral endeavor in this case. Even if defendants did misuse the 60-day period, and even if the extension were nothing more than a blatant delaying tactic, the Court is of the opinion that entry of default judgment would not be an appropriate sanction and that lesser sanctions would undoubtedly suffice to penalize defense counsel. *See In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1306 (11th Cir. 2006) ("The severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders.") (citation omitted); *Florida Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) ("a technical error or a slight mistake by a party's attorney should not deprive

the party of an opportunity to present the merits of his claim") (citation omitted).

For all of the foregoing reasons, plaintiffs' near-frivolous Motion for Default is **denied**.

## V.    Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.    Defendants' Motion for Leave to File Reply Brief (doc. 54) is **granted**; provided, however, that the Court will not consider portions of defendants' Sur-Reply that rehash arguments previously made, assert new arguments that could have been raised previously, or otherwise deviate from discussing the application of *Bridge v. Phoenix Bond & Indem. Co.* to this case.

2.    Defendants' Motion for More Definite Statement (doc. 28) is **denied**.

3.    Defendants' Motion to Dismiss (doc. 28) is **granted** with respect to Counts Six (intentional misrepresentation), Seven (negligent misrepresentation) and Eight (fraud and fraudulent concealment) of the First Amended Complaint.  Those causes of action are **dismissed** for failure to satisfy the heightened pleading requirements of Rule 9(b), Fed.R.Civ.P.  In all other respects, the Motion to Dismiss is **denied**.

4.    Plaintiffs' Motion for Entry of Default (doc. 38) is **denied**.

5.    The Court *sua sponte* **orders** plaintiffs, on or before **December 10, 2008**, to file a notice of contaminants for which relief is sought, identifying with specificity all hazardous and toxic substances which they contend were discharged by defendants, contaminated their properties, and for which they seek relief in this action.

6.    The stray references in the First Amended Complaint suggesting incorrectly that this action is proceeding under Rule 23 (such as the mention of "members of the putative class" in paragraph 100 and the statement in the *ad damnum* clause that plaintiffs seek relief on behalf of "all others similarly situated") are **stricken** as misleading and inaccurate, inasmuch as plaintiffs have advanced no class claims in these proceedings and any attempt to litigate these claims as a class action would be foreclosed by the denial of class certification in the *Fisher* litigation

-28-

involving substantially the same claims, defendants and counsel.

7.       To the extent that plaintiffs' RICO cause of action purports to seek recovery for plaintiffs' exposure to contaminants and their associated health risks, that cause of action is **dismissed** because personal injuries are not cognizable under RICO, as a matter of law.  Plaintiffs' RICO claim set forth in Count Eleven is confined to injuries to plaintiffs' business or property.

8.       Defendants are **ordered** to answer the First Amended Complaint on or before **September 24, 2008**.  A preliminary scheduling order will be issued promptly thereafter.  As indicated in previous rulings, the Court's expectation is that this case will be placed on a scheduling track under which all or part of this action will be set for trial by late 2009.

DONE and ORDERED this 10th day of September, 2008.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE