IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **CLEON ABRAMS, SR.,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | **PUBLISH** |
| | ) | |
| v. | ) | **CIVIL ACTION 08-0068-WS-B** |
| | ) | |
| **CIBA SPECIALTY CHEMICALS** | ) | |
| **CORPORATION,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on defendants' Motion for Partial Summary Judgment as to All Damages Predicated upon Events or Actions Occurring Prior to February 6, 1988 (doc. 224). This Motion has been briefed and is ripe for disposition.[1]

**I.   Background.**

This action involves claims that certain real property located in and around McIntosh, Alabama has been damaged by DDT contamination. The 277 plaintiffs[2] who brought this lawsuit are property owners who maintain that the source of the contamination was a chemical manufacturing plant in McIntosh that is or was at various times owned and operated by defendants, Ciba Specialty Chemicals Corporation, Ciba-Geigy Corporation, Novartis, Ltd., Inc., and Syngenta Crop Protection, Inc. (collectively, "Ciba"). According to the First Amended Complaint (doc. 26), the nub of plaintiffs' claims is their contention that "beginning in about

---

[1] The court file reflects that defendants did not submit a reply brief concerning this Motion. Therefore, the parties' only submissions before the Court as to this Motion are their respective principal briefs (docs. 225 & 249).

[2] By the Court's tally, 17 plaintiffs have dropped out of this action pursuant to Orders entered on August 25, 2008 (doc. 55), April 27, 2009 (doc. 165), June 24, 2009 (doc. 203), and September 16, 2009 (doc. 277) for various reasons, including settlement, failure to prosecute, acknowledgment that the plaintiff has no viable claims, or simply a stated desire not to proceed further. That leaves 260 remaining plaintiffs.

1952, solid and liquid wastes were disposed of by [Ciba] in several known source areas.  These source areas and the manufacturing processes have been managed in such a way that large amounts of chemicals, commonly known as DDT, DDD, and DDE (collectively DDTr), have impacted the McIntosh community and the homes of plaintiffs. ... The residences contain concentrations of DDTr at levels which pose an unacceptable risk to human health thereby reducing the property values of the community." (Doc. 26, ¶¶ 17-18.)  Plaintiffs' theory is that the wind has carried DDTr particulate matter off the Ciba site and onto their properties dating back to the 1950s and early 1960s, when Ciba was actively producing DDT at that location, and continuing through the present day.  On summary judgment, plaintiffs have staked themselves to a position that the measure of damages they seek to recover is confined to the cost of decontaminating their properties.

Upon initiating this lawsuit by filing their Complaint in February 2008, plaintiffs parlayed these basic factual allegations into 11 causes of action asserted by each plaintiff against each defendant, to-wit: negligence, conspiracy, strict liability, trespass, nuisance, intentional misrepresentation, negligent misrepresentation, fraud / fraudulent concealment, constructive fraud, punitive/ exemplary damages, and violation of the federal Racketeer Influenced and Corrupt Organizations Act.[3]  Each defendant countered by invoking the same 41 affirmative defenses in its Answer (docs. 57 - 60).[4]

---

[3]     Three of those causes of action (intentional misrepresentation, negligent misrepresentation, and fraud / fraudulent concealment) were dismissed as to all plaintiffs at the pleadings stage more than a year ago for failure to comport with the heightened pleading requirements of Rule 9(b), Fed.R.Civ.P.  (Doc. 56, at 14-18.)

[4]     The factual allegations and legal theories posited by the parties (including plaintiffs' causes of action and defendants' affirmative defenses) in this action bear striking resemblance to those previously presented in a related federal action before the undersigned styled *Jessie Fisher et al. v. Ciba Specialty Chemicals Corporation, et al.*, Civil Action No. 03-0566-WS-B.  After more than four years of extensive litigation (including an unsuccessful bid for class certification), the five *Fisher* plaintiffs reached a settlement with Ciba on October 19, 2007, shortly before jury selection was to occur.  The identities of counsel for both sides in this action are substantially similar to those in the *Fisher* matter, and the pleadings in this case appear to have their genesis in the corresponding *Fisher* pleadings, with some being reproduced nearly verbatim.

In the interests of justice, efficiency and judicial economy, Magistrate Judge Bivins developed and implemented a trial plan pursuant to which the claims of 27 representative "test plaintiffs" would proceed through the discovery and trial processes first, after which a case management plan would be tailored for the remaining plaintiffs. (*See* docs. 66, 239.) Of the original 27 test plaintiffs, only 17 remain in the case in a test plaintiff capacity at this time, for various reasons. The jury's verdict as to any test plaintiff will not be binding on any non-test plaintiff. The test plaintiff discovery period has concluded, and the test plaintiff trial is set for jury selection on November 3, 2009, with trial to follow during the November 2009 civil term. In preparation for trial, the parties have collectively filed some 14 motions for summary judgment or partial summary judgment, presenting various legal issues for judicial resolution before trial in an effort to streamline and focus the case.

This Order is confined to defendants' Motion for Partial Summary Judgment to dismiss all of plaintiffs' claims predicated on events occurring more than 20 years before February 6, 2008, the date on which the Complaint was filed. Defendants begin with the premise (uncontested by plaintiffs) that Ciba last manufactured DDT at its McIntosh facility in the mid-1960s.[5] To the extent, then, that plaintiffs seek to hold defendants liable for acts and omissions taken in connection with the production and waste disposal processes attendant to the manufacture of DDT (as opposed to migration of this contaminant off Ciba's site after production ended), plaintiffs attempt to recover for alleged wrongdoing by Ciba more than 40 years ago. In this Motion for Partial Summary Judgment, defendants maintain that plaintiffs' efforts to obtain relief for events occurring more than 20 years before the filing of the Complaint are categorically barred by Alabama's rule of repose. Plaintiffs respond that the commencement date of Alabama's rule of repose is preempted in this case by federal statute and is therefore no impediment to the timeliness of their claims. This discrete, purely legal issue has been squarely

---

[5] Defendants peg the terminus date for Ciba's production of DDT in McIntosh as being 1965. (Doc. 225, at 3.) Plaintiffs counter that the actual date of cessation was 1966. (Doc. 249, at 10.) This factual dispute is immaterial for purposes of this Order, and has no bearing on the analysis and conclusions set forth herein.

presented for disposition at this time.[6]

## II.     Analysis.

### A.     Overview of Alabama's Rule of Repose.

"Since 1858, causes of action asserted in Alabama courts more than 20 years after they could have been asserted have been considered to have been extinguished by the rule of repose." *Collins v. Scenic Homes, Inc.*, --- So.3d ----, 2009 WL 1875575, *4 (Ala. June 30, 2009) (citation omitted); *see also Moore v. Liberty Nat. Life Ins. Co.*, 267 F.3d 1209, 1213-14 (11th Cir. 2001) (stating that "it is clear that any claim in Alabama courts, brought more than twenty years after the time when it first could have been, is barred if the rule of repose applies"). In Alabama, this rule of repose is a creature of common law, not one of legislative enactment. *See Moore*, 267 F.3d at 1213 (discussing "Alabama's judicially created rule of repose"). Its only element is time. *See Ex parte Liberty Nat. Life Ins. Co.*, 825 So.2d 758, 764 (Ala. 2002) (noting that "the rule is based solely upon the passage of time"). Application of the rule "is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured." *Boshell v. Keith*, 418 So.2d 89, 91 (Ala. 1982). In that regard, concepts of notice or discovery of the injury have no place in Alabama's rule of repose analysis; rather, the 20-year period runs irrespective of when the plaintiff first received notice of the claim. *See*

---

[6]  The parties' memoranda reveal a factual dispute concerning the extent to which the alleged contamination may have resulted from Ciba's activities within (rather than outside) that 20-year period. In particular, defendants maintain that plaintiffs' experts "have attributed much of the contamination at issue in this case to the production years at Ciba" (doc. 225, at 3), while plaintiffs insist that defendants take the testimony out of context and that "releases of DDTr from the Ciba McIntosh facility occurred during the 1950's, 1960's and continued at least into 2005 and likely to this day" (doc. 249, at 11). The Court need not definitively resolve this disagreement at this time. After all, the Rule 56 Motion is specifically couched as one for partial summary judgment. Defendants do not suggest that application of the Alabama rule of repose would extinguish plaintiffs' claims in their entirety, but only that portion concerning events, conduct, or activities predating the filing of the Complaint by more than 20 years. Thus, plaintiffs' claims concerning DDT emissions by defendants post-dating 1988 (albeit through non-production means, since Ciba was no longer manufacturing that substance in McIntosh) are not implicated in any way by defendants' Motion. Given the parties' apparent unanimity that plaintiffs' causes of action would survive, at least in part, even if this Motion were granted, it is unnecessary at this time to quantify precisely the relative fractions of plaintiffs' claims directed at pre-1988 activity and post-1988 activity.

*Liberty*, 825 So.2d at 764; *Moore*, 267 F.3d at 1218.  In short, "the rule of repose bars actions that have not been commenced within 20 years from the time they could have been commenced." *Collins*, 2009 WL 1875575, at *5 (citation and internal quotation marks omitted).  Where the rule applies, the 20-year time period begins to run when the complained-of action occurs, not when the claim might otherwise accrue.  *Moore*, 267 F.3d at 1218.

        Alabama courts frequently remark on the conceptual similarities between the rule of repose and statutes of limitations.  *See, e.g., Harrison v. Alabama Forever Wild Land Trust*, 4 So.3d 1114, 1117 (Ala. 2008) ("This principle of repose or prescription is similar to a statute of limitations, but not dependent upon one, and broader in scope.") (citations omitted); *Liberty*, 825 So.2d at 764 (recognizing that Alabama's rule of repose "is similar to a statute of limitations"). That said, the differences between Alabama's rule of repose and a traditional statute of limitations are pronounced and well-defined.  The Alabama Supreme Court catalogued the most significant of these differences as follows: "First, the rule is based solely upon the passage of time, ... and is not based upon concepts of accrual, notice, or discovery - concepts that are applicable to statutes of limitation. ... Second, the rule is broader than a statute of limitation in that while a statute of limitations generally is procedural and extinguishes the remedy rather than the right, ... repose is substantive and extinguishes both the remedy and the actual action." *Liberty*, 825 So.2d at 764-65 (internal quotation marks and citations omitted); *see also German ex rel. Grace v. CSX Transp., Inc.*, 510 F. Supp.2d 630, 632-33 (S.D. Ala. 2007) (reciting differences between Alabama's rule of repose and traditional statutes of limitations).

        ***B.***     ***This Court's Commencement Date Rulings in Related Litigation.***

        As the parties acknowledge, there is a certain *deja vu* quality to their briefing concerning the application of Alabama's rule of repose in this case.  That is because this Court previously ruled on this very issue after considering arguments from the same attorneys about the same (or substantially similar) underlying conduct and events, and relating to the same (or substantially similar) theories of liability, in the predecessor Ciba McIntosh litigation styled *Jessie Fisher, et al. v. Ciba Specialty Chemicals Corporation, et al.*, Civil Action No. 03-0566-WS-B.  In fact, the Court wrote to the rule of repose issue on two occasions in *Fisher*.  (*See* docs. 56 and 557 in Civil No. 03-566.)  Furthermore, the Court decided an identical rule of repose issue in another McIntosh contamination case brought by the same plaintiffs' attorneys and styled (at that time)

-5-

*Dorothy Jean Reed, et al. v. Olin Corporation, et al.*, Civil Action No. 03-0567-WS-B.[7]  (*See* doc. 36 in Civil No. 03-567.)

In each of these cases, the Court considered the effect, if any, of the federal Comprehensive Environmental Response, Compensation and Liability Act, as amended, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), on application of Alabama's rule of repose.  In so doing, the Court acknowledged that when a federal court is sitting in diversity, as is the case here, state law generally governs action commencement issues such as statutes of limitation and repose.[8]  However, CERCLA contains an express preemption provision, which reads as follows:

> "In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, ***if the applicable limitations period for such action (as specified in the State statute of limitations or under common law)*** provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute."

42 U.S.C. § 9658(a)(1) (emphasis added).  The federally required commencement date ("FRCD") is defined in CERCLA as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a)(1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."  42 U.S.C. § 9658(b)(4)(A).  If § 9658 applies, its preemptive effect causes the time period for Alabama's rule of repose to begin running not when the harmful action occurred (*i.e.*, when Ciba released DDT into the McIntosh community), but rather when plaintiffs first knew or

---

[7] The *Reed* litigation is commonly known and referred to by the parties herein as the *LaBauve* action.  Several months after adjudication of the rule of repose issue in that case, the plaintiffs filed an amended complaint deleting Dorothy Jean Reed as a named plaintiff and putative class representative, and naming Carrie Jean LaBauve to replace her in those capacities.

[8] *See, e.g., Reisman v. General Motors Corp.*, 845 F.2d 289, 291 (11th Cir. 1988) ("Except in matters governed by the federal Constitution or by acts of Congress, federal courts in diversity cases must apply the law of the forum state, including its statute of limitations."); *Nett ex rel. Nett v. Bellucci*, 269 F.3d 1, 7 (1st Cir. 2001) (in diversity context, federal court's "reliance on state law to resolve action commencement issues raised by state statutes of limitations also applies to state statutes of repose.").

reasonably should have known that their property was contaminated by DDT (which appears to have occurred long after much or all of the emissions in question). As such, the question of whether CERCLA preempts the commencement date for plaintiffs' claims against Ciba has profound implications for the temporal scope of the events on which plaintiffs' causes of actions can rest.

In both *Fisher* and *Reed*, the undersigned concluded that the commencement date of Alabama's rule of repose is preempted by CERCLA. Thus, the Court held that the FRCD marked the commencement date for purposes of assessing whether the plaintiffs' claims for environmental contamination of their property by chemical manufacturers in McIntosh, Alabama satisfied the 20-year rule of repose. Although Ciba and Olin opposed application of the FRCD to these cases on various bases,[9] it wasn't until the third iteration of this issue that Ciba seized upon the argument it continues to champion today, to-wit: that CERCLA's preemption provision does not reach rules of repose, as a matter of law, but is instead confined to statutes of limitations.

Ciba unveiled this argument at the summary judgment stage in *Fisher* by maintaining that the undersigned's prior § 9658 preemption rulings in McIntosh litigation were undermined by the Fifth Circuit's intervening opinion in *Burlington Northern & Santa Fe Ry. Co. v. Poole Chemical Co.*, 419 F.3d 355 (5th Cir. 2005). The *Burlington* panel reasoned that "[t]he plain language of § 9658 ... refers to state statutes of limitations - not state statutes of repose. This court is bound by that plain language ...." 419 F.3d at 364. In *Fisher*, however, the Court agreed

---

[9] When the issue first arose in *Reed* in late 2003, Olin objected to use of the FRCD on the grounds that § 9658(a) applies only where there are underlying federal causes of action under CERCLA, and not to actions confined to state-law claims of negligence, nuisance and the like. Based on the plain language of the statute and review of applicable case authorities, the Court found that Olin was improperly attempting to engraft additional prerequisites onto § 9658(a), in excess of those established by the terms of the statute. *Reed v. Olin Corporation*, Civil Action No. 03-0567-WS-M, doc. 36 (slip op.), at 9-12 (S.D. Ala. Dec. 31, 2003). Similarly, when the rule of repose issue was litigated for the first time in *Fisher*, Ciba's principal FRCD argument was that § 9658(a)(1) could not retroactively revive plaintiffs' rights to bring claims to the extent that those rights had been extinguished under state law before Congress enacted that preemption statute. *Fisher v. Ciba Specialty Chemicals Corp.*, Civil Action No. 03-0566-WS-B, doc. 56 (slip op.), at 18-22 (S.D. Ala. July 20, 2004). Ciba has not renewed these specific objections here.

with plaintiffs' counsel's unchallenged argument that *Burlington* is distinguishable and therefore not persuasive to a case involving Alabama's rule of repose:

> "Unlike the case at bar, *Burlington* concerned application of a state *statute* of repose, rather than a state rule of repose.  Section [] 9658 provides that the FRCD preempts limitations periods set by 'the State statute of limitations or under common law.'  *Burlington* seized on this statutory language to note that Congress spoke of statutes of limitations but omitted reference to statutes of repose.  Here, however, there is no statute of repose, but there is instead a rule of repose created by Alabama common law.  Under the plain language of § 9658, Congress intended the FRCD to be afforded primacy over limitations periods set by state common law.  What is Alabama's rule of repose if not a limitations period prescribed by state common law? ... In light of plaintiffs' unrebutted, persuasive contention that *Burlington* has no application in the context of a common-law rule of repose, and given the clear language of § 9658 applying the FRCD to limitations periods set by common law, the Court declines defendants' invitation to overturn its prior determination that the FRCD provides the commencement date for Alabama's rule of repose in this case."

*Fisher v. Ciba Specialty Chemicals Corp.*, 2007 WL 2995525, *15 (S.D. Ala. Oct. 11, 2007) (footnote omitted).[10]

### C.     *Defendants' Contention that CERCLA Preemption is Inapplicable.*

Apparently hoping that the fourth time is the charm, defendants endeavor once again to avoid the preemptive effects of CERCLA on the commencement date of Alabama's rule of repose.  This time, Ciba urges the Court to revisit its previous rulings once more because a pair of non-binding case district court decisions militates against application of the FRCD in the rule of repose context.  In particular, Ciba contends that a contrary result is warranted pursuant to *German ex rel. Grace v. CSX Transp., Inc.*, 510 F. Supp.2d 630 (S.D. Ala. 2007) and especially

---

[10]     One month after the *Fisher* ruling concerning the FRCD and Ciba's rule of repose defense, the Court reaffirmed it in remanding an environmental contamination lawsuit brought against Olin and others by more than 75 plaintiffs (including overlapping plaintiffs in this case) in the McIntosh area.  *See Abrams v. Olin Corp.*, 248 F.R.D. 283 (S.D. Ala. 2007).  In rejecting Olin's post-removal argument that the plaintiffs had fraudulently joined non-diverse individual defendants against whom their claims were barred by Alabama's rule of repose under a *Burlington* analysis, the Court pointed out that its "reasoning in *Fisher* applies with equal force here; therefore, the commencement date of plaintiffs' claims for Alabama rule of repose purposes is not the date of the harmful action, but rather the date on which plaintiffs knew or reasonably should have known that defendants' actions had damaged their property."  *Id.* at 290.

*Evans v. Walter Industries, Inc.*, 579 F. Supp.2d 1349 (N.D. Ala. 2008).[11]  At the centerpiece of Ciba's latest attempt to avert FRCD preemption is a question of statutory interpretation hinging on the meaning of the phrase "applicable limitations period."[12]

### 1. *McDonald v. Sun Oil Co.*

As a threshold matter, it bears noting that in asserting that "further decisional authority" warrants taking another look at the FRCD/rule of repose interplay, Ciba neglects to mention that post-*Fisher* authorities include cases decided adversely to Ciba's position and supporting this Court's prior rulings on the subject.  Most notably, the Ninth Circuit held last year that "the term 'statute of limitations' in CERCLA § 309 [42 U.S.C. § 9658] is ambiguous and the legislative history of the section indicates that its meaning includes statutes of repose."  *McDonald v. Sun Oil Co.*, 548 F.3d 774, 779 (9th Cir. 2008), *cert denied sub nom. Sunoco, Inc. v. McDonald*, 129 S.Ct. 2825 (2009).  *McDonald* fully appreciated that "[s]tatutes of limitations and repose are distinct legal concepts with distinct effects."  *Id.* at 779.  Unlike authority cited by Ciba, however, the Ninth Circuit deemed that distinction not to be dispositive.  Instead, the

---

[11]  *German* actually predates this Court's ruling in *Fisher* by more than five months; however, Ciba did not bring that decision to the fore prior to the *Fisher* ruling, and the undersigned was unaware of it at that time.

[12]  For whatever reason, Ciba did not advance this definitional argument in *Fisher*, but instead does so here for the first time.  Ciba's evolving, incremental attacks on the application of the FRCD are not improper, inasmuch as they have been made in different cases and therefore are not subject to the typical strictures governing motions to reconsider rulings made in the same case.  *See, e.g., Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997) ("a motion to reconsider should not be used by the parties to set forth new theories of law"); *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (cautioning against use of motion to reconsider to afford a litigant "two bites at the apple"); *Gipson v. Mattox*, 511 F. Supp.2d 1182, 1185 (S.D. Ala. 2007) ("A motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.") (citation omitted).  Nonetheless, the chameleonic nature of Ciba's arguments in addressing the FRCD issue over the lifespan of multiple related lawsuits is tantamount to taking multiple bites at the apple.  The result, unfortunately, is marked inefficiency and needless expenditure of litigant and judicial resources to return on multiple occasions, a la Bill Murray's hapless character in *Groundhog Day*, to variants, extensions and permutations of the same arguments on the same issues in one case after another, rehashing the same rulings based on theories that Ciba could have advanced earlier, but did not.

*McDonald* panel opined that "[t]he term 'statute of limitations' was ambiguous regarding whether it included statutes of repose when § 309 was enacted in 1986," inasmuch as contemporaneous legal scholarship routinely flip-flopped in use of these phrases, such that the term had "no plain meaning with respect to whether it included statutes of repose." *Id.* at 781.

Turning to the legislative history, the *McDonald* court found that "Congress's ***primary concern in enacting § 309 was to adopt the discovery rule in situations where a plaintiff may lose a cause of action before becoming aware of it*** - precisely the type of circumstance involved in this case. This predicament can be caused by either statutes of limitation or statutes of repose, ***and is probably most likely to occur where statutes of repose operate***." *Id.* at 783 (emphasis added). Accordingly, the Ninth Circuit found that Congress intended the term "statute of limitations" in § 9658 to embrace statutes of repose, as well as traditional statutes of limitations. While this reasoning is not identical to that in *Fisher*, it does bolster and reinforce the undersigned's previous rulings that the FRCD is applicable here, and that CERCLA preempts the commencement date of Alabama's rule of repose for purposes of this action.

        2.     *Rules/Statutes of Repose and Limitations Periods.*

Setting *McDonald* aside for the moment, Ciba's criticism of the *Fisher* ruling is rooted in defendants' contention that "[b]y its plain terms, § 9658 preempts only inconsistent state statutes of limitations." (Doc. 225, at 8.) Because the Alabama Supreme Court and the Eleventh Circuit have distinguished between statutes of limitations and Alabama's rule of repose, Ciba continues, § 9658 can have no application here. Both Ciba and one of the opinions it cites fault *Fisher* for blurring or otherwise failing to appreciate the distinction between statutes of limitation and statutes or rules of repose, suggesting that confusion as to the difference between these devices (one procedural, the other substantive) underlies and ultimately invalidates the *Fisher* holding.

The Court cannot embrace either Ciba's reading of the *Fisher* decision or its interpretation of the relevant CERCLA section. Nowhere in *Fisher* was Alabama's rule of repose equated to a traditional statute of limitations. Moreover, the critical statutory language is not framed in terms of statutes of limitation. Rather, the actual text of the relevant provision (and the language upon which *Fisher* focused) is couched in terms of the FRCD preempting a state "limitations period," not merely a state statute of limitations. *See* 42 U.S.C. § 9658(a)(1) (the FRCD preempts the state commencement date set forth in "the applicable ***limitations period***

for such action (as specified in the State statute of limitations or under common law)") (emphasis added). Although Ciba and certain authority it cites apparently view them as synonyms, there is an important difference between the terms "limitations period" and "statute of limitations." In general usage, the term "limitations period" is commonly understood by Alabama and federal courts to encompass traditional statutes of limitations as well as rules and statutes of repose. Indeed, more than 60 years ago, the Alabama Supreme Court expressly recognized that Alabama's 20-year prescriptive restriction is a "period of limitation, ... created by the chancery court as a rule of repose." *Meeks v. Meeks*, 37 So.2d 914, 917 (Ala. 1948) (on rehearing). Furthermore, even a cursory review of case law from this and other jurisdictions reveals legion authorities routinely referring to rules and statutes of repose as creating limitations periods. *See, e.g., Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1279 n.5 (11th Cir. 2005) ("Regarding the definiteness of a statute of repose, the Supreme Court recognized that the purpose of the limitations period is clearly to serve as a cutoff and held that tolling principles do not apply.") (citation and internal quotation marks omitted); *Moore*, 267 F.3d at 1217 ("Application of an additional, distinct state limitations period, such as a rule of repose, would contradict our mandate to borrow and apply only one specific limitations period ....").[13]

---

[13] *See also Tomczyk v. Jocks & Jills Restaurants, LLC*, 2006 WL 2271255, *9 (11th Cir. Aug. 9, 2006) (describing a Georgia medical malpractice "statute of repose ... which places a five-year limitations period on claims beginning from the date of the negligent or wrongful act or omission") (citation omitted); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508-09 (5th Cir. 2008) (referring to statutes of repose in various federal statutes as "limitations periods" or "limitations provisions"); *In re Exxon Mobil Corp. Securities Litigation*, 500 F.3d 189, 194 (3rd Cir. 2007) ("the limitations periods consisted of a one-year statute of limitations and a three-year statute of repose"); *Home Port Rentals, Inc. v. International Yachting Group, Inc.*, 252 F.3d 399, 403 n.1 (5th Cir. 2001) ("proceedings to enforce or execute a judgment need only be commenced before the bar date, even if the limitation period is a statute of repose"); *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (discussing "the ERISA limitations period we recently found to be a statute of repose"); *In re Verilink Corp.*, --- B.R. ----, 2009 WL 1586505, *3 (Bankr. N.D. Ala. Apr. 9, 2009) ("The ALSLA contains two different limitations periods in the same section: a statute of limitations and a statute of repose."); *Glonti v. Stevenson*, 2009 WL 311293, *5 (S.D.N.Y. Feb. 6, 2009) ("The second prong of the limitations period ... is a period of repose, which serves as a definitive cut-off for bringing suit."); *In re Brocade Communications Systems, Inc. Derivative Litigation*, 615 F. Supp.2d 1018, 1035 (N.D. Cal. 2009) ("The five-year outer limitations period in a § 10(b) claim serves as a statute of repose."); *Champion v. Homa*, 2008 WL 900967, *10 (M.D. Ala. Mar. 31, 2008) ("[t]he three

years limitations period acts as a statute of repose"); *Lopardo v. Lehman Bros., Inc.*, 548 F. Supp.2d 450, 462 (N.D. Ohio 2008) ("whether or not they label a limitations period as a statute of repose, or a statute of limitations, ... it is constitutionally acceptable for the legislature to provide a general cut-off for bringing certain types of actions"); *In re iBasis, Inc. Derivative Litigation*, 532 F. Supp.2d 214, 220 (D. Mass. 2007) ("The one-year limitations period functions as a statute of limitations and the three-year limitations period functions as a statute of repose."); *In re G-I Holdings, Inc.*, 2006 WL 1751793, *7 (D.N.J. June 21, 2006) ("The limitations period under the Uniform Fraudulent Conveyance Act is recognized by many jurisdictions as a statute of repose."); *United House of Prayer for All People v. United Bldg. Contractors, Inc.*, 428 F. Supp.2d 688, 697 (E.D. Mich. 2006) ("Unlike normal limitations periods that are only statutes of limitation, the six year period in this case is also a statute of repose."); *Williams v. Congregation Yetev Lev*, 2004 WL 2924490, *7 (S.D.N.Y. Dec. 16, 2004) (citing Florida authority for the proposition that "any suspension of a limitations period pertains equally to statutes of limitation and repose") (citation omitted); *Theunissen v. GSI Group*, 109 F. Supp.2d 505, 509-10 (N.D. Miss. 2000) (opining that Mississippi statute "which establishes a six-year limitations period" for construction defect claims "is rather a statute of repose"); *Pedraza v. United Guar. Corp.*, 114 F. Supp.2d 1347, 1353 (S.D. Ga. 2000) ("The Supreme Court interpreted the second of the two limitations periods ... as a statute of repose."); *Lombardo v. Secretary of Health and Human Services*, 34 Fed.Cl. 21, 25 (Fed.Cl. 1995) (indicating that "where a limitation period is a period of repose, *i.e.*, designed to serve as a cut-off, a plaintiff or petitioner may not avail himself of the doctrine of equitable tolling"); *Anse, Inc. v. Eighth Judicial Dist. Court of State of Nevada*, 192 P.3d 738, 745 (Nev. 2008) (explaining that a homeowner may seek certain remedies under Nevada law "so long as he or she does so within the limitation period provided by the applicable statute of repose"); *Lester v. Smith*, 198 P.3d 402, 405 (Okla.Civ.App. Div. 1 2008) (explaining that "the discovery rule may not be applied to the limitation period" contained in a statute of repose); *Frigo v. Silver Cross Hosp. and Medical Center*, 876 N.E.2d 697, 716 (Ill.App. 1 Dist. 2007) (holding that defendant was adequately apprised of transaction on which plaintiff's claims were based "before the expiration of the limitations periods (the two-year statute of limitations and four-year statute of repose)"); *R.A.C. v. P.J.S., Jr.*, 927 A.2d 97, 105 (N.J. 2007) ("courts generally do not expand the limitations period defined by a statute of repose unless the Legislature carved out exceptions that permit for tolling"); *DeLuna v. Burciaga*, 857 N.E.2d 229, 237-38 (Ill. 2006) (decrying "the unqualified and imprecise use of terms like 'limitations period' or 'period of limitations,' when referring to either a statute of limitations or a statute of repose," and observing that legislature and courts have used such term "limitations period" to describe statutes of limitations and statutes of repose interchangeably); *Citizens Ins. Co. v. Scholz*, 709 N.W.2d 164, 166 (Mich.App. 2005) (finding that "the statute of repose for actions against architects, engineers, and contractors ... provides the limitations period for this action"); *Evans ex rel. Kutch v. State*, 56 P.3d 1046, 1067 (Alaska 2002) (explaining that "[t]he statute of repose ... imposes a ten-year limitations period"); *Pafford v. Biomet*, 448 S.E.2d 347 (Ga. 1994) (concluding that "[o]ther state statutes of repose begin their limitations period as of the date of first sale, lease or delivery of the product") (internal quotation marks omitted); *Hodder v. Goodyear Tire & Rubber Co.*, 426 N.W.2d 826, 830 (Minn. 1988) ("A statute of repose starts the

As stated *supra*, under § 9658 the FRCD sets the commencement date for state-law claims for property damage by contaminants released into the environment from a facility, as to any "applicable limitations period for such action (as specified in the State statute of limitations or under common law)." Because the phrase "limitations period" is commonly understood and utilized to encompass traditional statutes of limitations as well as statutes and rules of repose, Alabama's rule of repose provides a "limitations period" for plaintiffs' claims against Ciba, notwithstanding the fact that it is legally distinct from a statute of limitations.[14] Because Alabama's rule of repose provides a "limitations period" specified under common law, it falls within the plain language of CERCLA's preemption statute, such that plaintiffs here are entitled to rely on the FRCD in fixing the commencement date of the 20-year repose period.[15] Ciba has posited neither argument nor evidence in its Rule 56 Motion that might support a finding that the FRCD for any test plaintiff was more than 20 years before the filing of the Complaint in this action; therefore, Alabama's rule of repose does not bar, curtail or otherwise truncate any of the test plaintiffs' claims herein.

---

limitation period for bringing an action from the date of manufacture or sale of the product ...."); Tex. Civ. Prac. & Rem. Code § 16.011(c) ("This section is a statute of repose and is independent of any other limitations period.").

[14]    *See, e.g., In re Davis*, 565 F.3d 810, 823 (11th Cir. 2009) (explaining that courts assume that Congress used words "as they are commonly and ordinarily understood"); *Assa'ad v. United States Attorney General*, 332 F.3d 1321, 1329 (11th Cir. 2003) ("When construing the meaning of a statute, we begin with the language Congress has chosen and assume that the words used are intended to carry their ordinary meaning.").

[15]    By its terms, § 9658 applies only to actions "brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility." 42 U.S.C. § 9658(a)(1). Ciba does not contend that any of these statutory prerequisites are not satisfied here, nor could it reasonably do so given that the crux of plaintiffs' claims herein is that they sustained property damage as a result of DDT released from Ciba's McIntosh manufacturing facility into the surrounding community. Thus, the sole disputed question concerning § 9658's application to this case is whether Alabama's rule of repose constitutes an "applicable limitations period" for purposes of the statute.

### 3.     *The Effect of Section 9658(b)(2).*

In so concluding, the Court does not overlook the definition of "applicable limitations period" set forth in § 9658(b)(2). The definitional provision states, "The term 'applicable limitations period' means the period specified in a statute of limitations during which a civil action referred to in subsection (a)(1) of this section may be brought." 42 U.S.C. § 9658(b)(2). Ciba maintains that this definition is dispositive of the FRCD issue because it expressly limits the phrase "applicable limitations period" to periods specified in statutes of limitations. But this argument oversimplifies and distorts § 9658 by reading one subsection in a vacuum without taking it in context of the statute as a whole. *See, e.g., Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1266 (11th Cir. 2006) (emphasizing that statutory construction is "a holistic endeavor" and that statutory language must be construed in context, rather than in isolation); *In re Welzel*, 275 F.3d 1308, 1317 (11th Cir. 2001) ("In interpreting one part of a statute, we must not be guided by a single sentence or member of a sentence, but must look to the provisions of the whole law, and to its object and policy.") (citation and internal quotation marks omitted). The problem for Ciba lies in its failure to reconcile the definition found in § 9658(b)(2) with the language utilized in § 9658(a)(1). Rather than examining and explaining the interplay between the two, Ciba simply credits the former provision (which is favorable to its position) while discarding the latter (which is not).

Undoubtedly, there is a tension between the two provisions. In subsection (b)(2), Congress defined the term "applicable limitations period" solely by reference to "a statute of limitations." By contrast, in subsection (a)(1), Congress stated that "the applicable limitations period" was "as specified in the State statute of limitations *or under common law*," which appears broader than the subsection (b)(2) definition. The discrepancy demonstrates that § 9658 is ambiguous as to the meaning of "applicable limitations period." To resolve this ambiguity, it is appropriate to consult familiar canons of statutory construction. *See, e.g., Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1247 (11th Cir. 2008) ("In construing an ambiguous statute, we also employ canons of construction which embody sound generalizations about Congressional intent."); *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1225 (11th Cir. 2001) (where statutory language is not transparent, canons of construction are tools at courts' disposal for elucidating the meaning of a statute). Two of those principles have particular

application here.[16]

First, courts are discouraged "from adopting a reading of a statute that renders any part of the statute mere surplusage." *Tug Allie-B, Inc. v. United States*, 273 F.3d 936, 944 (11th Cir. 2001); *see also United States v. Aldrich*, 566 F.3d 976, 978 (11th Cir. 2009) ("statutes should be construed so that no clause, sentence, or word shall be superfluous, void, or insignificant") (citation and internal quotation marks omitted); *Garcia*, 540 F.3d at 1247 ("we strive to give effect to every word and provision in a statute when possible"); *United States v. Ballinger*, 395 F.3d 1218, 1237 (11th Cir. 2005) (emphasizing "basic principle that the words of a statute are written to fill a purpose, not to fill a page"). Ciba would have this Court adopt the definition of "applicable limitations period" in subsection (b)(2) to the exclusion of the conflicting language in subsection (a)(1). More precisely, Ciba's approach would be effectively to strike the clause "as specified in the State statute of limitations or under common law" from subsection (a)(1). Under a plain reading of § 9658(a)(1), this clause modifies the term "applicable limitations period" to include periods during which civil actions may be brought, as specified both in state

---

[16] Additionally, it is well established that courts must attempt to read a statute in a manner that harmonizes their provisions and avoids ambiguity, if possible, such that "we read the statute to give full effect to each of its provisions." *Davis*, 565 F.3d at 823 (citation omitted); *see also Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1173 (11th Cir. 2003) ("our task is to read the statute harmoniously, as a whole"). Although not integral to its reasoning or conclusions herein, the Court observes that there is a way to heed this guidance and read the two provisions to alleviate the conflict. The Ninth Circuit approach in *McDonald v. Sun Oil Co.*, discussed *supra*, would effectuate a harmonious result by interpreting the term "statute of limitations" to include both statutes of limitations and statutes of repose. *See McDonald*, 548 F.3d at 783 ("it is evident that the term 'statute of limitations' in [§ 9658] was intended by Congress to include statutes of repose"). If *McDonald* is correct and the term "statute of limitations" is construed in § 9658 as including both limitations and repose provisions, that term could also be read as embracing rules of repose, thereby alleviating any inconsistency between the usage of the term "applicable limitations period" in subsections (a)(1) and (b)(2), since both include within their reach "statutes of limitations." Stated differently, by following the Ninth Circuit's lead and affording a broad and inclusive meaning to the undefined term "statute of limitations" in § 9658, the apparent inconsistency in the language of the two subsections concerning the scope of "applicable limitations period" could potentially be resolved without voiding either of those provisions. That route would lead to the very same result that the Court reaches here by prompting a conclusion that Alabama's rule of repose does indeed specify an applicable limitations period, the commencement of which is preempted by CERCLA's FRCD.

statutes of limitations and under common law (*i.e.*, rules of repose). To excise Alabama's rule of repose from the ambit of that term, Ciba would simply jettison the "or under common law" modifier from the text of § 9658(a)(1). But doing so would run counter to the canon frowning on the treatment of statutory language as mere surplusage. The only way to give meaning to that "or under common law" language is to find, as this Court does, that "applicable limitations periods" include both periods specified by state legislatures via statute and periods specified as a matter of state common law, as Alabama has done with its rule of repose.[17]

Second, it is also a well-settled canon of statutory construction that "in determining the meaning of an ambiguous statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Tug Allie-B*, 273 F.3d at 945 n.9.[18] It is widely recognized that CERCLA is a remedial statute whose terms should be construed

---

[17] One of the cases cited by Ciba attempted to assign meaning to the "or under common law" language of subsection (a)(1) by indicating that "the common law preempted by the section should likewise be a statute of limitations period specified by common law." *Evans v. Walter Industries, Inc.*, 579 F. Supp.2d 1349, 1362 (N.D. Ala. 2008). Of course, it is true that, at least in certain jurisdictions, there do exist common law statutes of limitations. *See, e.g., Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp.2d 439, 452 (E.D.N.Y. 2007) ("the common law statute of limitations for fraud is six years"). But this reading of subsection (a)(1) is unsatisfying because, if "under common law" simply means "common law statutes of limitations," then that language is wholly redundant because that subsection already refers to statutes of limitations, without differentiating between those enacted by legislatures and those fashioned by judges. Again, the key text of subsection (a)(1) discusses applicable limitations periods "as specified in the State statute of limitations or under common law." Congress would not need to add the phrase "under common law" to capture common law statutes of limitations because the all-inclusive term "State statute of limitations" was already listed in that same clause. Thus, this approach would read "or under common law" in a manner that is wholly redundant of, and adds nothing to, the previous words in the same clause. Doing so would contravene another applicable canon of construction. *See Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573, 1577 n.9 (11th Cir. 1993) (statutes should be interpreted so that "no provision ... be construed to be entirely redundant") (citation omitted).

[18] *See also APA Excelsior III L.P. v. Premiere Technologies, Inc.*, 476 F.3d 1261, 1268 (11th Cir. 2007) (opining that "statutory language must be read in the context of the purpose it was intended to serve" and "should not be considered in a vacuum and divorced from its underlying purpose") (citations omitted); *London v. Fieldale Farms Corp.*, 410 F.3d 1295, 1302 (11th Cir. 2005) ("in all cases of statutory construction, our task is to interpret the words of the statute in light of the purposes Congress sought to serve").

liberally to carry out its purposes. *See, e.g., Monarch Tile, Inc. v. City of Florence*, 212 F.3d 1219, 1221 (11th Cir. 2000) ("CERCLA is a broad, remedial statute animated by a sweeping purpose to ensure that those responsible for contaminating American soil shoulder the costs of undoing that environmental damage."); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1318 (11th Cir. 1990) (indicating that "liberal judicial interpretation" of CERCLA term "is required in order that we achieve CERCLA's overwhelmingly remedial statutory scheme") (citations and internal quotation marks omitted).[19] But this Court is not limited to that general guidance about remedial purposes and liberal construction. To the contrary, while they disagreed on the application of § 9658 to statutes of repose, both the Fifth Circuit in *Burlington* and the Ninth Circuit in *McDonald* fundamentally agreed on the Congressional purposes animating § 9658. Indeed, the Fifth Circuit opined that § 9658 was passed in response to a finding "that many state systems were inadequate to deal with the delayed discovery of the effect of a release of a toxic substance." *Burlington*, 419 F.3d at 364.[20] Likewise, the Ninth Circuit

---

[19] *See also Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066 (9th Cir. 2006) (ambiguous provision in CERCLA "must be given a liberal judicial interpretation ... consistent with CERCLA's overwhelmingly remedial statutory scheme") (citation and internal quotation marks omitted); *United States v. E.I. Dupont De Nemours and Co.*, 432 F.3d 161, 185 (3rd Cir. 2005) (en banc) ("We note that because CERCLA is remedial legislation, it should be construed liberally to carry out its purpose.") (citation omitted); *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 191 F.3d 409 (4th Cir. 1999) ("Because CERCLA is a comprehensive remedial statutory scheme, ... courts must construe its provisions liberally to avoid frustrating the legislature's purpose.") (citation and internal quotation marks omitted); *Prisco v. A & D Carting Corp.*, 168 F.3d 593 (2nd Cir. 1999) ("As a remedial statute, CERCLA should be construed liberally to give effect to its purposes.") (citations omitted); *Atlantic Richfield Co. v. American Airlines, Inc.*, 98 F.3d 564, 570 (10th Cir. 1996) ("because CERCLA is remedial legislation, it should be construed liberally to carry out its purpose").

[20] A vital part of the *Burlington* court's reasoning was its determination that the plaintiff in that case did not fall within the class of persons that Congress sought to help via the passage of § 9658. The plaintiff in *Burlington* purchased above-ground storage tanks from the defendant in October 1988. In January 2003, one of the tanks ruptured, spilling hundreds of thousands of gallons of chemicals onto the plaintiff's property. As the Fifth Circuit put it, "Poole knew about its injury as soon as the tank ruptured," yet it waited until after the 15-year statute of repose expired before bringing suit. 419 F.3d at 365. These circumstances, the *Burlington* court found, rendered that case distinguishable from the long-latency disease scenario or the situation in which the time for filing a claim expired before the plaintiff ever learned that a

-17-

emphasized that "Congress's primary concern in enacting [§ 9658] was to adopt the discovery rule in situations where a plaintiff may lose a cause of action before becoming aware of it." *McDonald*, 548 F.3d at 783.

Those policy justifications underlying § 9658 fit plaintiffs' claims against Ciba like a glove. Plaintiffs' evidence is that they (or at least most of them) were unaware that DDT releases emanating from Ciba's McIntosh factory were contaminating and devaluing their properties until long after many of those releases took place, and indeed decades after Ciba stopped producing DDT at that location. This is exactly the kind of "delayed discovery" case that Congress had in mind when it passed § 9658 into law in 1986. If the statutory ambiguity concerning the phrases "applicable limitations period" and "or under common law" is to be resolved in a manner that is deferential to the remedial purposes and liberal construction which CERCLA is owed, as well as the clear intent of Congress to avoid bouncing people like the McIntosh plaintiffs out of court simply because they failed to discover the environmental contamination on their properties in time, then § 9658 must be read in such a manner to apply the FRCD to the commencement date for plaintiffs' claims under Alabama's rule of repose in this case.[21]

---

hazardous substance had caused his injury. Thus, *Burlington* simply did "not involve the delayed discovery ... which § 9658 was intended to address." *Id.* at 364-65. By contrast, plaintiffs' claims against Ciba in the case at bar fall squarely within the delayed discovery fact pattern which Congress enacted § 9658 to address.

[21] To dispel any potential misunderstanding on this point, the Court is well aware of the admonition that courts must not use their interpretation of Congressional intent as a license to rewrite an unambiguous statute in conformity with that perception. *See, e.g., In re Hedrick*, 524 F.3d 1175, 1187-88 (11th Cir. 2008) (professing sharp disagreement with the premise "that a court is authorized to interpret a statute contrary to the plain meaning of its words if doing so would, in the court's view, better further the purpose it thinks Congress had in mind"); *Garcia*, 540 F.3d at 1247 ("We may consult legislative history to elucidate a statute's ambiguous or vague terms, but legislative history cannot be used to contradict unambiguous statutory text or to read an ambiguity into a statute which is otherwise clear on its face."); *APA Excelsior*, 476 F.3d at 1268 (clarifying that legislative history materials are not referenced to contravene Congress's clear and unambiguous will, but instead to determine Congressional intent). The Court has engaged in no such exercise here. Rather, the undersigned made a specific finding that the subsections of § 9658 create ambiguity as to whether limitations periods created by common law and not embodied in state statutes of limitations are or are not subject to FRCD preemption. It is

**III.     Conclusion.**

In enacting 42 U.S.C. § 9658, Congress indicated that in cases involving property damage caused by a facility's emission of contaminants into the environment, CERCLA's federally required commencement date preempts the commencement date of the applicable state limitations period.  Courts around the country have commonly used the term "limitations period" interchangeably to refer to both statutes of limitations and statutes/rules of repose.  While § 9658 does include a definitional subsection that purports to link "applicable limitations period" exclusively to statutes of limitation, the latter term is not defined and has recently been construed by one federal appeals court as encompassing statutes of repose.  Moreover, the statute is ambiguous because another subsection of § 9658 provides that the "applicable limitations period" is "as specified in the State statute of limitations or under common law."  Applying well-worn canons of construction to resolve the ambiguity, the Court declines movant's suggestions to write the phrase "or under common law" out of the statute or to construe it in a manner that renders it wholly redundant surplusage given the words that precede it.  To give effect to that clause, the phrase "or under common law" must have independent meaning, and must mean that an "applicable limitations period" to which the FRCD applies also encompasses limitations periods that (a) are not statutes of limitation and (b) are created under common law.  Rules of repose would satisfy those criteria.  Under this reading, Alabama's rule of repose falls neatly within the ambit of an "applicable limitations period" whose commencement date is altered by CERCLA's preemption provision.  This conclusion is reinforced by examination of the statute's objectives, which confirm that Congress enacted § 9658 for the express purpose of preserving state remedies in delayed-discovery cases.  This case is a paradigmatic example of the type of situation for which Congress enacted § 9658; therefore, this Court will not resolve the statutory ambiguity in a manner adverse to this clearly articulated Congressional purpose.

For all of the foregoing reasons, defendants' Motion for Partial Summary Judgment As to All Damages Predicated Upon Events or Actions Occurring Prior to February 6, 1988 (doc. 224) is **denied**.

---

only for the purpose of resolving that ambiguity that the Court looks to legislative history and the Congressional objectives undergirding the passage of § 9658.

DONE and ORDERED this 1st day of October, 2009.

s/ WILLIAM H. STEELE<br>
UNITED STATES DISTRICT JUDGE