IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CLEON ABRAMS, SR., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0068-WS-B |
| | ) |
| CIBA SPECIALTY CHEMICALS | ) |
| CORPORATION, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment (doc. 219), wherein plaintiffs seek judgment in their favor on 15 affirmative defenses interposed by defendants. The Motion has been briefed and is ripe for disposition.[1]

---

[1] Also pending is Plaintiffs' Unopposed Motion for Leave to Exceed Page Limitation (doc. 261). For cause shown, that Motion is **granted**, and the Court will accept and consider plaintiffs' Reply (doc. 260) as filed, despite the fact that it exceeds the 15-page limit prescribed by Local Rule 7.1(b). Nonetheless, it bears mentioning that the Reply actually exceeds the page limit by far more than a mere one page, as plaintiffs contend. In contrast to the briefing on many of the other Rule 56 motions in this case, the briefing on Plaintiffs' Motion for Partial Summary Judgment breaks out the fact sections into documents separate from the briefs. No recitation of facts is contained in the briefs (docs. 219, 243, 260); rather, the fact section of each brief is presented in a freestanding document filed contemporaneously with the brief. It is, of course, true that the Local Rules contemplate that a statement of undisputed facts and conclusions of law is to be filed as a separate document. Ordinarily, however, those statements merely echo information set forth in the briefs, as opposed to supplementing the briefs with unique statements and analysis not presented elsewhere. The parties have largely adhered to that convention in the six-year history of their dispute. Nonetheless, where, as here, a statement of fact is presented only in a separate document and not in a brief, both the brief and the statement of facts are aggregated for purposes of the page limits imposed by LR 7.1(b). Otherwise, litigants could circumvent those restrictions by diverting material from the brief and larding the statement of facts with it. Here, plaintiffs' Reply is 16 pages long, but the accompanying "Reply to Defendants' Statement of Contested and Uncontested Facts" (doc. 260, at Exh. 1) adds another 15 pages of heft not presented in the Reply proper; therefore, plaintiffs' reply is properly construed as being 31 pages, not 16.

**I.      Background.**

This action involves claims that certain real property located in and around McIntosh, Alabama has been damaged by DDT contamination. The 277 plaintiffs[2] who brought this lawsuit are property owners who maintain that the source of the contamination was a chemical manufacturing plant in McIntosh that is or was at various times owned and operated by defendants, Ciba Specialty Chemicals Corporation, Ciba-Geigy Corporation, Novartis, Ltd., Inc., and Syngenta Crop Protection, Inc. (collectively, "Ciba"). According to the First Amended Complaint (doc. 26), the nub of plaintiffs' claims is their contention that "beginning in about 1952, solid and liquid wastes were disposed of by [Ciba] in several known source areas. These source areas and the manufacturing processes have been managed in such a way that large amounts of chemicals, commonly known as DDT, DDD, and DDE (collectively DDTr), have impacted the McIntosh community and the homes of plaintiffs. ... The residences contain concentrations of DDTr at levels which pose an unacceptable risk to human health thereby reducing the property values of the community." (Doc. 26, ¶¶ 17-18.) Plaintiffs' theory is that the wind has carried DDTr particulate matter off the Ciba site and onto their properties dating back to the 1950s and early 1960s, when Ciba was actively producing DDT at that location, and continuing through the present day. On summary judgment, plaintiffs have staked themselves to a position that the measure of damages they seek to recover is confined to the cost of decontaminating their properties.

Plaintiffs have parlayed these basic factual allegations into 11 causes of action asserted by each plaintiff against each defendant, to-wit: negligence, conspiracy, strict liability, trespass, nuisance, intentional misrepresentation, negligent misrepresentation, fraud / fraudulent concealment, constructive fraud, punitive/ exemplary damages, and violation of the federal

---

[2] By the Court's tally, 17 plaintiffs have dropped out of this action pursuant to Orders entered on August 25, 2008 (doc. 55), April 27, 2009 (doc. 165), June 24, 2009 (doc. 203), and September 16, 2009 (doc. 277) for various reasons, including settlement, failure to prosecute, acknowledgment that the plaintiff has no viable claims, or simply a stated desire not to proceed further. That leaves 260 remaining plaintiffs.

Racketeer Influenced and Corrupt Organizations Act.[3]  Each defendant countered by invoking the same 41 affirmative defenses in its Answer (docs. 57 - 60).[4]

In the interests of justice, efficiency and judicial economy, Magistrate Judge Bivins developed and implemented a trial plan pursuant to which the claims of 27 representative "test plaintiffs" would proceed through the discovery and trial processes first, after which a case management plan would be tailored for the remaining plaintiffs.  (*See* docs. 66, 239.)  Of the original 27 test plaintiffs, only 17 remain in the case in a test plaintiff capacity at this time, for various reasons.  The jury's verdict as to any test plaintiff will not be binding on any non-test plaintiff.  The test plaintiff discovery period has concluded, and the test plaintiff trial is set for jury selection on November 3, 2009, with trial to follow during the November 2009 civil term.  In preparation for trial, the parties have collectively filed some 14 motions for summary judgment or partial summary judgment, presenting various legal issues for judicial resolution before trial in an effort to streamline and focus the case.

Notwithstanding the parties' proliferation of Rule 56 motions, this Order is confined to plaintiffs' Motion for Partial Summary Judgment relating specifically to the viability of 15 of defendants' affirmative defenses.[5]  In summary, plaintiffs maintain that the Alabama Rule of

---

[3]     Three of those causes of action (intentional misrepresentation, negligent misrepresentation, and fraud / fraudulent concealment) were dismissed as to all plaintiffs at the pleadings stage more than a year ago for failure to comport with the heightened pleading requirements of Rule 9(b), Fed.R.Civ.P.  (Doc. 56, at 14-18.)

[4]     The factual allegations and legal theories posited by the parties (including plaintiffs' causes of action and defendants' affirmative defenses) in this action bear striking resemblance to those previously presented in a related federal action before the undersigned styled *Jessie Fisher et al. v. Ciba Specialty Chemicals Corporation, et al.*, Civil Action No. 03-0566-WS-B.  After more than four years of extensive litigation (including an unsuccessful bid for class certification), the five *Fisher* plaintiffs reached a settlement with Ciba on October 19, 2007, shortly before jury selection was to occur.  The identities of counsel for both sides in this action are substantially similar to those in the *Fisher* matter, and the pleadings in this case appear to have their genesis in the corresponding *Fisher* pleadings, with some being reproduced nearly verbatim.

[5]     The remaining 13 summary judgment motions will be addressed separately via contemporaneous orders.  In considering the Motion (doc. 219), the Court has reviewed the parties' respective principal briefs (docs. 219, 243), plaintiffs' reply (doc. 260), the parties'

Repose (Second Affirmative Defense) does not apply; that defendants have no evidence of laches, estoppel or waiver (Third Affirmative Defense); that failure to prove nuisance (Fourth Affirmative Defense) is not an affirmative defense; that the OSHA Hazard Communication Standard (Tenth Affirmative Defense) is inapplicable; that the res judicata, collateral estoppel, and accord and satisfaction defenses (Eleventh, Thirty-First, and Thirty-Third Affirmative Defenses) are inapplicable; that defendants have presented no evidence of failure to mitigate damages (Twelfth Affirmative Defense), contributory negligence or assumption of the risk (Thirteenth Affirmative Defense), unavoidable accident or act of God (Sixteenth Affirmative Defense), acts and omissions of others proximately causing plaintiffs' injuries (Seventeenth Affirmative Defense), or DDT contamination caused by plaintiffs or their predecessor owners (Thirty-Fourth and Forty-First Affirmative Defenses); that the harmless chemical defense (Twenty-Third Affirmative Defense) is inapplicable because DDTr is a known hazardous substance; and that the defense that plaintiffs have no right to recover for damage to property or waterways owned by others (Twenty-Eighth Affirmative Defense) is inapplicable because plaintiffs make no such claims.

In their opposition brief, defendants acknowledge that they "do not intend to pursue the defenses related to OSHA, res judicata, accord and satisfaction, and collateral estoppel (Defenses 10, 11, 31 and 33) as to this particular Test Plaintiff group." (Doc. 243, at 1 n.1.) In light of this concession, the Motion is **granted** with respect to the OSHA-standard defense set forth as the Tenth Affirmative Defense, the res judicata and accord and satisfaction defenses set forth as the Eleventh Affirmative Defense, the collateral estoppel defense set forth as the Thirty-First Affirmative Defense, and the payment-and-release defense set forth as the Thirty-Third Affirmative Defense. At the test plaintiff trial, defendants may not present evidence of, or make arguments to the jury concerning, these four defenses; provided, however, that nothing herein

---

separate filings concerning disputed and undisputed facts (docs. 219-2, 243-2, and 260-2), and the evidentiary submissions accompanying these respective filings, as well as all other portions of the court file deemed relevant.

precludes or prevents Ciba from relying on those defenses as to any other plaintiffs.[6] The Court now proceeds to examine the remaining 11 affirmative defenses whose availability is challenged by plaintiffs' Motion.

## II.     Summary Judgment Standard and "No Evidence" Rule 56 Motions.

Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

In an unusual maneuver, plaintiffs submit virtually no evidence in support of their Motion for Partial Summary Judgment. Indeed, the only substantive exhibits filed with their principal brief are a single Federal Register page (the text on the left side being truncated by the

---

[6]     Plaintiffs' Motion is ambiguous as to whether summary judgment is sought only as to availability of these defenses at the test plaintiff trial, or for the case in its entirety. There is a potential that plaintiff-specific issues will or may trigger applicability of one or more of these affirmative defenses for non-test plaintiffs. Accordingly, the Court will not preclude defendants at this time from invoking such defenses as to non-test plaintiffs, particularly where there has been no discovery regarding the claims of those individuals and plaintiffs have not expressly maintained that Rule 56 relief should extend beyond the test plaintiffs.

photocopying or scanning process) from 1969 proposing cancellation of DDT's registration with the Department of Agriculture (doc. 219, Exh. B) and an 8-page, virtually illegible excerpt from the Federal Register in 1972 containing EPA Administrator findings relating to DDT (doc. 219, Exh. C).  Plaintiffs also attach a document purporting to be their "Statement of Undisputed Facts and Conclusions of Law" (doc. 219, Exh. A); however, plaintiffs provide no record citations in support of their statement of purportedly undisputed facts, and begin almost every numbered "fact" with the phrase: "There is no evidence that ...."  As such, plaintiffs' statement of undisputed facts contravenes plain requirements that "all findings of fact [must be] appropriately referenced to the supporting document or documents filed in the action or in support of the motion."  Local Rule 7.2(a).

More importantly, plaintiffs' approach ignores time-honored principles concerning the shifting burdens of proof on summary judgment.  As stated *supra*, it is black-letter law that "[t]he moving party bears the burden of proving that no genuine issue of material fact exists." *Information Systems and Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002); *see also Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (summary judgment movant always shoulders "initial burden of production in demonstrating the absence of any genuine issue of material fact, and the court must satisfy itself that the burden has been satisfactorily discharged"); *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) ("the moving party may discharge this initial responsibility by showing that there is an absence of evidence to support the nonmoving party's case").  "It is never enough for the movant simply to state that the non-moving party cannot meet its burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (citation omitted).[7]  Yet that is precisely what plaintiffs have done here in moving for summary judgment on the defenses of laches, waiver and

---

[7] *See also Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1396 (11th Cir. 1994) ("The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.") (citation and internal quotation marks omitted); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000) ("When a party moves for summary judgment, ... it is not enough for the moving party to merely make a conclusory statement that the other party has no evidence to prove his case.") (citation and internal quotation marks omitted).

estoppel (Third Defense); failure to mitigate damages (Twelfth Defense); contributory negligence / assumption of risk (Thirteenth Defense); unavoidable accident / act of God (Sixteenth Defense); damages proximately caused by others (Seventeenth Defense); and application of DDT by plaintiffs or their predecessors (Thirty-Fourth and Forty-First Defenses). As to each of those affirmative defenses, plaintiffs present no facts and make no legal arguments, but offer only conclusory statements that defendants have marshaled "no evidence" to support those defenses.

Not surprisingly, defendants' Opposition stresses that plaintiffs' Motion fails to satisfy their initial burden of demonstrating the absence of genuine issues of material fact. In response, plaintiffs insist that "[d]efendants overlook the basic principle of a **no-evidence** motion for summary judgment, which is that summary judgment is appropriate where the party bearing the burden of proof [at trial] has presented no evidence to support its claim and/or defense." (Doc. 260, at 1-2 (emphasis in original).) Plaintiffs cite no authority for this purportedly "basic principle," which runs directly counter to the binding precedent identified above.

Plaintiffs' contention that their lapses in proof are excusable because they filed a "no-evidence motion for summary judgment" is not well taken. The Eleventh Circuit has never used that term in a published decision. Moreover, the undersigned's research reveals that a "no-evidence summary judgment motion" is a creature of the State of Texas Rules of Civil Procedure. It has no application in federal court. *See, e.g., Seastrunk v. Darwell Integrated Technology, Inc.*, 2009 WL 2705511, *9 (N.D. Tex. Aug. 27, 2009) ("A no-evidence motion for summary judgment, however, is a pleading that may be filed in state court, but not federal court.") (citation omitted); *Green v. Texas A & M University System*, 2008 WL 416237, *1 n.2 (S.D. Tex. Feb. 14, 2008) ("Counsel is reminded that while a no evidence summary judgment is authorized under Texas Rule of Civil Procedure 166a(i), there is no such thing under Federal Rule of Civil Procedure 56."); *Cardner v. Home Depot U.S.A., Inc.*, 561 F. Supp.2d 640, 642 (E.D. Tex. 2006) ("A no evidence motion for summary judgment is only available in the Texas state courts."); *Royal Surplus Lines Ins. Co. v. Brownsville Independent School Dist.*, 404 F. Supp.2d 942, 948 (S.D. Tex. 2005) ("[T]he concept of a 'no evidence' summary judgment neither accurately describes federal law nor has any particular import in the vernacular of federal

summary judgment procedure.").[8]  Although plaintiffs' counsel (whose offices are located in Texas) may be accustomed to utilizing this device in state court proceedings on their home turf, they have proffered no valid basis in fact or law for importing this Texas procedural mechanism into federal proceedings in Alabama.[9]  Therefore, the Court finds that plaintiffs are not exempted from meeting their initial burden on summary judgment simply by labeling their filing a "no-evidence motion."

Nor is plaintiffs' fallback position any more convincing.  Plaintiffs suggest that interpreting the Rule 56 burden of proof in the manner championed by defendants would be akin to mission impossible, asking rhetorically, "How can Plaintiffs present evidence negating any essential element of one or more of the Defendants' affirmative defenses when no such evidence exists ...?"  (Doc. 260, at 2.)  But this dilemma is no different than that confronting any other summary judgment movant in any other case.  More importantly, a couple of concrete examples will illustrate why plaintiffs' position is untenable.  With respect to the mitigation of damages affirmative defense (Twelfth Defense), it would presumably be a straightforward matter for plaintiffs to put on evidence that they in fact mitigated their property damages or that mitigation was impossible because of the nature of the harm.  Plaintiffs did neither, but instead sought to shift their Rule 56 burden to defendants from the outset.  Likewise, with regard to the

---

[8]  "After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial."  Rule 166a(i), Tex.R.Civ.P.  Of course, the Texas Rules of Civil Procedure do not govern here, and there is no analogous provision in the Federal Rules of Civil Procedure.

[9]  At best, plaintiffs cite *Celotex* for the proposition that "a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." (Doc. 260, at 2 (emphasis omitted).)  The key word in that sentence is "showing."  Plaintiffs have made no such showing.  In the Eleventh Circuit, *Celotex* is construed as meaning that "under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient ***to point to materials on file that demonstrate*** that the party bearing the burden of proof at trial will not be able to meet that burden.  Even after *Celotex* it is never enough simply to state that the non-moving party cannot meet its burden at trial."  *Clark*, 929 F.2d at 608 (emphasis added).  As such, plaintiffs' reliance on *Celotex* to evade their initial burden on summary judgment is misplaced.

contributory negligence defense (Thirteenth Defense), it would presumably be an easy matter for plaintiffs to submit evidence that they never applied or disposed of DDT on their properties. Instead, plaintiffs made no showing. The point is that a Rule 56 movant's initial burden is hardly the unattainable ideal that plaintiffs portray it to be, either in general or in the specific context of the issues presented here.

In light of the foregoing, the Court concludes that plaintiffs have failed to satisfy their initial burden on summary judgment with respect to each of the following affirmative defenses: laches, waiver and estoppel (Third Defense); failure to mitigate damages (Twelfth Defense); contributory negligence / assumption of the risk (Thirteenth Defense); unavoidable accident / act of God (Sixteenth Defense); damages proximately caused by others (Seventeenth Defense); and application of DDT by plaintiffs or their predecessors (Thirty-Fourth and Forty-First Defenses). As to those defenses, then, Plaintiffs' Motion for Summary Judgment is **denied**.

### III.   Genuine Issues of Material Fact Remain as to the "No Evidence" Defenses.

To dispel any sense that plaintiffs' Motion has received short shrift because plaintiffs' conclusory "no evidence" arguments fail to comport with fundamental Rule 56 burden-shifting principles, it bears noting that the result would be unchanged even if one were to assume that plaintiffs did satisfy their initial burden. As to all seven defenses as to which plaintiffs posited "no evidence" objections, defendants have made a sufficient showing of genuine issues of material fact, or extenuating circumstances are present, that warrant allowing those defenses to remain in the case at this time.

With respect to the laches/waiver/estoppel defense, defendants' evidence is that at least certain test plaintiffs participated and received settlement benefits in earlier environmental litigation, and that plaintiffs are suing for allegedly wrongful actions taken by Ciba decades ago. Neither side having addressed the laches/waiver/estoppel defense in a rigorous manner or in anything beyond cursory terms, the Court will not perform the parties' research for them, nor will it make arguments for them as to the sufficiency of defendants' evidence. It is enough to note that such evidence on its face appears to leave open the possibility that a defense of laches/waiver/estoppel may be available here. If deemed appropriate, the Court may order trial

briefs on this defense at the pretrial conference.[10]

With respect to mitigation of damages, defendants' evidence is that all test plaintiffs admit to having done nothing to clean up their property and indicate that they lack the resources or knowledge to do so. (Doc. 243, at Exh. 3.) Defendants also point to the testimony of plaintiffs' clean-up engineer, Randy Horsak, that DDT contamination levels in plaintiffs' homes could be reduced "by perhaps just vacuuming the rug, doing some basic wipedowns, things like that." (Horsak Dep., at 148.) While Horsak indicated that such measures would not reduce plaintiffs' DDT levels to the desired 10 ppb background concentration, they would diminish the degree of contamination in plaintiffs' homes and therefore presumably lower the clean-up costs that plaintiffs claim as damages in this action. This evidence thus creates a genuine issue of material fact as to whether test plaintiffs took reasonable steps to mitigate their damages, and defendants will be allowed to present that defense at trial.[11]

---

[10] Alabama courts have explained that a defendant invoking laches must show that (1) the plaintiffs delayed in asserting their right or claim, (2) the delay was inexcusable, and (3) the delay caused the defendant undue prejudice. *Hankins v. Crane*, 979 So.2d 801, 811 (Ala.Civ.App. 2007); *see also Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984) (to prove laches, defendant must show "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that the delay caused defendant undue prejudice") (citation and internal quotation marks omitted). "Classic elements of undue prejudice, for purposes of determining the applicability of the doctrine of laches, include the unavailability of witnesses, changed personnel, and the loss of pertinent records. ... To bring the doctrine of laches into operation, ... it is sufficient if the court believes that, under the circumstances, it is too late to ascertain the merits of the controversy." *Hankins*, 979 So.2d at 811-12 (citations omitted). The Court is aware of no undue prejudice, and suspects that plaintiffs did not bring this action too late to ascertain the merits of the controversy. That said, plaintiffs' briefing made only passing mention of the prejudice prong of the test; therefore, the Court will not reject the laches defense for want of prejudice when defendants were not fairly placed on notice of a need to come forward with evidence of same to rebut plaintiffs' conclusory submission.

[11] Plaintiffs' arguments to the contrary are not persuasive. First, plaintiffs suggest that DDT is continuing to spread from Ciba's facility into the McIntosh community today, such that any clean-up efforts by plaintiffs would be in vain because "it is likely that more DDT would come onto their properties over time." (Doc. 260, at 6.) The cited record evidence (consisting of excerpts from the deposition of defendants' air modeling expert) does not support a reasonable inference that DDT is continuing to spread from Ciba's facility onto plaintiffs' property; therefore, this argument appears unfounded. Second, plaintiffs insist that "this is not a case where cleaning-up or making temporary repairs will mitigate one's damages." (*Id.*) Why

As for the contributory negligence defense, defendants' Opposition (doc. 243) is geared towards presenting evidence that test plaintiffs have contributed to the diminution in their properties' value, rather than that test plaintiffs contributed to the DDT concentrations at their properties. (Doc. 243, at 11-12.) Defendants' confusion on this point is understandable. Until plaintiffs filed their opposition brief in connection with another Rule 56 motion in this case in the early morning hours of August 13, 2009, all appearances were that the measure of damages they sought was diminution in property value. In that brief, however, plaintiffs unequivocally indicated that "Plaintiffs do not seek damages in the amount of diminished property value as Defendants contend." (Doc. 256, at 2, 11.) Unfortunately, defendants filed their Opposition to plaintiffs' Rule 56 Motion on August 12, 2009, hours before plaintiffs dropped their bombshell concerning the type of damages at issue. Under the circumstances, it would be inequitable to penalize defendants for focusing their evidentiary showing on the contributory negligence defense on diminution in value issues, rather than DDT contamination and clean-up issues. That circumstance, coupled with plaintiffs' failure to meet their initial summary judgment burden as discussed *supra*, warrants denial of plaintiffs' Motion as to this affirmative defense.[12]

---

not? Plaintiffs seek to recover the costs of decontaminating their homes. Plaintiffs deny having done anything to decontaminate their homes. But plaintiffs' own expert testified to common-sense, simple steps that can be taken to reduce the level of contamination at no marginal cost to plaintiffs. This sounds like a textbook application of the doctrine of failure to mitigate damages. Third, plaintiffs indicate that "decontaminating Plaintiffs' homes to the 10ppb DDT background level will require specialized cleaning and remediation." (*Id.* at 7.) There is certainly evidence to support this statement. But merely because a plaintiff cannot reasonably eliminate his damages altogether does not mean that his damages award cannot be reduced because he failed to take reasonable steps to mitigate his damages.

[12] That said, the evidence of contributory negligence that defendants did submit on the issue of DDT contamination is unimpressive. That evidence consists, in its entirety, of the following: (a) testimony by test plaintiff Mary Ferrell, upon being asked whether she had sprayed DDT on her property, that "[i]f it was in anything that was manufactured to spray, you know, bugs or kill grass around the house, I did" (Ferrell Dep., at 35-36) with no follow-up to ascertain what products she had used; (b) testimony by test plaintiff Elliott Fields that his father-in-law had said that Fields' wife's grandfather once stored bags of DDT on "his property" (Fields Dep., at 67); and (c) testimony by test plaintiff Ruth Everette that her parents had sprayed DDT inside the house at a different property than that where Everette now resides (Everette Dep., at 24-25). Ferrell's testimony is too speculative and attenuated, without a showing of

Defendants' unavoidable accident / act of God defense is predicated on the notion that test plaintiffs' properties would be contaminated with DDT even in the absence of Ciba's McIntosh activities. There is evidence to support this position. Plaintiffs' expert, Horsak, acknowledged that "it's widespread. ... [T]here is widespread DDT contamination on all levels." (Horsak Dep., at 89.) Explaining this testimony, Horsak opined that DDT contamination is widespread "throughout the world." (*Id.*)[13] The issue, as the Court understands this affirmative defense, is whether the DDT on test plaintiffs' property came from the Ciba facility in McIntosh or whether it came from "the same things that cause DDT to be present almost everywhere in the world, including Antarctica." (Doc. 243, at 13.) By all appearances, there remain genuine issues of material fact as to the source of the DDT on test plaintiffs' property, so it would be improper to foreclose defendants from arguing at trial that plaintiffs are not entitled to prevail because the DDT on their property was blown there by act of God rather than through act or omission of Ciba.[14]

---

which pesticides and herbicides she used, and whether they contained DDT. Fields' testimony is hearsay, and defendants provide no explanation for how they intend to reduce it to admissible form at trial; besides, it is unclear whether Fields is even referring to the same property that is at issue in this action. And Everette's testimony that her parents sprayed DDT at some other location is hardly evidence that she applied DDT at her own property. Absent a more compelling evidentiary showing at trial, defendants will not be permitted to proceed on this contributory negligence defense.

[13] Plaintiffs suggest that defendants have oversimplified and mischaracterized Horsak's testimony by relying on these excerpts. (Doc. 260-2, at 12-13.) After careful review of this testimony in context, the Court disagrees with plaintiffs' assessment. Without doubt, the thrust of Horsak's testimony was that there is widespread DDT contamination throughout the world, just as defendants state. That Horsak qualified his remarks by stating that DDT is not ubiquitous like hydrogen or oxygen in no way blunts or modifies the plain meaning of his statements about DDT's widespread nature.

[14] Plaintiffs ask the rhetorical question, "How can DDT, a man-made chemical, be an act of God?" (Doc. 260, at 11.) This query misses the point. Obviously, DDT is a man-made chemical. No one is suggesting that an act of God created DDT. That's not what this case is about. Rather, the relevant question in this case is how that man-made DDT reached plaintiffs' property. Was it through Ciba's acts or omissions? Or was it an act of God (which has caused DDT to be widespread throughout the world, according to plaintiffs' own expert, even far from places where it is manufactured)? Therein lies the jury question precluding summary judgment for plaintiffs.

Next is defendants' affirmative defense that plaintiffs' damages were proximately caused by others. As with the contributory negligence defense, defendants dedicated much of their showing on this defense to evidence that other forces were responsible for the decline in plaintiffs' property values. Now that plaintiffs have revealed that their theory of damages is not diminution in value, but is instead recovery of DDT clean-up costs, it would be unfair to penalize defendants for plaintiffs' tactical shift by barring their intervening/supervening cause defense without giving them an opportunity to establish evidence of same in the context of plaintiffs' claimed form of damages. For that reason, as well as plaintiffs' failure to meet their initial summary judgment burden, plaintiffs' Motion will not be granted as to this defense.[15]

Finally, as for the affirmative defenses concerning application of DDT by plaintiffs and their predecessors, much of defendants' Opposition addresses chemicals other than DDT, apparently because of confusion caused by plaintiffs' late-breaking explanation that they seek no damages for diminution in property values, but instead claim their DDT clean-up costs as damages. In light of the seismic shift in plaintiffs' theory of damages and plaintiffs' failure to meet their initial burden of proof on summary judgment, defendants will be given an opportunity to come forward with evidence that plaintiffs or their predecessors applied DDT to their property. If, however, their evidentiary showing on that point is as threadbare as is suggested by their opposition brief, then defendants will not be permitted to present these affirmative defenses to the jury, as with the contributory negligence and supervening / intervening causation defenses discussed *supra*.

---

[15] That said, as with the contributory negligence defense, defendants' evidentiary showing is quite skimpy on the question of other sources of DDT contamination on plaintiffs' property. Defendants state that "Defendants believe that the DDT also arrived through the actions of persons other than Defendants." (Doc. 243, at 14.) What defendants believe is not evidence and will not enable them to present this affirmative defense to the jury. Also unavailing is defendants' reliance on allegations in a pleading in another case that an incinerator site several miles away has DDT contamination "caused during the transportation of the hazardous materials to the incinerator site." (Doc. 243, Exh. 13, at ¶ 20.) This pleading in another case is not evidence that plaintiffs in this case have DDT on their property coming from the incinerator or any sources other than Ciba. If this is all the evidence defendants have to support their Seventeenth Defense, then the jury will not receive this issue at trial.

## IV.     The Other Challenged Affirmative Defenses.

The remaining four challenged affirmative defenses (application of Alabama's rule of repose, failure to prove nuisance, harmless chemical, and damage to others' property or public waterways) stand on a different footing, because plaintiffs' Motion does not seek their dismissal solely on "no evidence" grounds.  Rather, with respect to each of these defenses, plaintiffs point to logical or legal defects that, according to plaintiffs, preclude defendants from relying on those affirmative defenses at trial.  The parties' summary judgment dispute concerning each of the four remaining challenged defenses can be resolved expeditiously.

The Second Affirmative Defense is that plaintiffs' claims are barred by the Alabama rule of repose.  By separate order entered on this date, the undersigned has written extensively to reaffirm prior holdings in related litigation that the commencement date for Alabama's 20-year rule of repose in this case is preempted by the Federally Required Commencement Date ("FRCD") pursuant to CERCLA.  The FRCD is defined in CERCLA as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages ... were caused or contributed to by the hazardous substance or pollutant or contaminant concerned."  42 U.S.C. § 9658(b)(4)(A).  To the extent that the parties now seek to re-plough the same ground previously covered in this action and predecessor actions concerning whether CERCLA preempts the commencement date of Alabama's rule of repose in the circumstances presented here, the Court declines to do so.  Although the FRCD preemption issue has been decided in plaintiffs' favor, it does not automatically follow that they are entitled to summary judgment on the Second Defense.  The weakness with plaintiffs' Motion as to this affirmative defense was aptly expressed in *Fisher* as follows: "Inasmuch as there are some facts that might raise an inference that one or more plaintiffs' FRCD occurred more than 20 years prior to the filing of the Complaint, the Court cannot categorically strike down defendants' rule of repose defense at this time."  *Fisher v. Ciba Specialty Chemicals Corp.*, 2007 WL 2995525, *20 (S.D. Ala. Oct. 11, 2007).  The same is true here.[16]  Therefore, defendants will not be categorically barred from

---

[16]     For instance, test plaintiff Mary Ferrell that she was "very, very concerned" about contamination in McIntosh back in the mid-1980s, to the point where she personally "tried to get two lawsuits started" in 1986 by meeting with an attorney and contacting the EPA.  (Ferrell Dep., at 28-29.)  According to Ferrell, several other test plaintiffs attended the lawyer meeting

-14-

presenting their rule of repose defense at trial, provided that they may do so only as to test plaintiffs for whom there is evidence that they knew or should have known that their property was damaged by DDT more than 20 years before the Complaint was filed in February 2008.[17]

Plaintiffs also seek summary judgment on the Fourth Affirmative Defense, wherein defendants maintain that plaintiffs' claims "are barred in whole or in part by the provisions of Ala. Code §§ 6-5-120 through 6-5-127." (Doc. 57, at 9.) The cited statutory sections are the codification of Alabama's law of nuisance. Although the briefing on this issue is somewhat confusing, it needn't be. The parties and this Court have already navigated this same road in *Fisher*, wherein the undersigned granted summary judgment in the *Fisher* plaintiffs' favor on a similar defense interposed by Ciba. The gravamen of this Fourth Affirmative Defense is defendants' position that plaintiffs cannot prove all essential elements of their nuisance cause of action. But "[a] defense predicated on a plaintiff's inability to prove the elements of its claim is not an affirmative defense." *Fisher*, 2007 WL 2995525, at *20 (citations omitted). To the extent, then, that Ciba wishes to argue that plaintiffs cannot prove that "a nuisance result[ed] from the negligent or improper operation of [Ciba's] plant," Ala. Code § 6-5-127(a), that requirement "is an element of plaintiffs' nuisance claim that they must prove at trial, and is not properly categorized as an affirmative defense." *Fisher*, 2007 WL 2995525, at *20. For these

---

with her. (*Id.* at 35.) On this showing, the Court cannot foreclose the possibility that a reasonable jury could find that these individuals reasonably should have inquired about the source of their injury back in 1986, such that their FRCD predated the filing of this lawsuit by more than 20 years. *See Fisher*, 2007 WL 2995525, at *16-18 (collecting authorities and applying legal standards for FRCD, and finding that jury questions remained).

[17]    The Court is well aware that plaintiffs contend that their "claims for damages relating to property contamination are predicated, in part, on activities that occurred ***less than*** twenty years ago" because "DDT is currently being transported by air from the facility (i.e. the source of the DDT) into the McIntosh community." (Doc. 260, at 3.) As noted elsewhere, the very limited evidence which plaintiffs cite for this proposition does not support it. To the extent that plaintiffs have evidence from which reasonable inferences can be drawn that their properties have been contaminated with DDT from Ciba in the last 20 years, they certainly may present it to the jury at trial, and such evidence may defeat the rule of repose defense. But the Court will not strip defendants of that defense where plaintiffs have failed to identify evidence to support their "ongoing contamination" theory, much less uncontroverted evidence warranting entry of summary judgment in plaintiffs' favor on that point.

reasons, as well as those set forth in *Fisher*, plaintiffs' Motion for Summary Judgment is **granted** as to the Fourth Affirmative Defenses; provided, however, that defendants will not be barred or restricted from contesting plaintiffs' ability to prove all of the legally required elements of a nuisance claim at trial.[18]

As their Twenty-Third Affirmative Defense, defendants allege that "[a]ny alleged contamination to Plaintiffs' property arising from Defendant's conduct involves compounds that are harmless, non-toxic, and incapable of causing actionable property damage." (Doc. 57, at 14.) Plaintiffs move for summary judgment on this defense. Because this precise issue was addressed in *Fisher* and because the parties' briefs play out in strikingly similar fashion to their contentions in that case, the undersigned will not endeavor to reinvent the wheel, but will instead repeat and adopt what was previously written in *Fisher*, to-wit:

> "[I]n their opposition brief, defendants explain that their position [is] that the *concentrations* of DDT found at plaintiffs' property are insufficient to create more than a *de minimis* risk of harm. ... This is a markedly different argument from that set forth in the Twenty-Third Affirmative Defense. To say that the quantity of DDT found on plaintiffs' property ... is insufficient to cause harm or property damage is nothing at all like saying DDT in general is a harmless substance that is incapable of causing property damage. Defendants' Twenty Third Affirmative Defense states the latter, not the former. Inasmuch as defendants have failed to

---

[18] The Court's treatment of this issue was hampered by two misleading aspects of defendants' brief. First, defendants mischaracterize plaintiffs' argument by insisting that plaintiffs "have improperly attempted to flip the burden on the Defendants to show that the Section 6-5-127 applies." (Doc. 243, at 9.) The Court has carefully scrutinized plaintiffs' principal brief, and finds no improper burden-shifting argument of the sort ascribed to them by defendants. Far from suggesting that it is up to defendants to prove that their plant was not operated in a negligent or improper manner, plaintiffs openly acknowledge that "[p]laintiffs must prove that a nuisance result[ed] from the negligent or improper operation of [Ciba's] plant." (Doc. 219, at 7 (internal quotation marks omitted).) Defendants thus unhelpfully distort plaintiffs' position on summary judgment. Second, defendants state repeatedly that plaintiffs' nuisance claims are barred as a matter of law by § 6-5-121, which generally provides that public nuisance claims give no right of action to individuals. (Doc. 243, at 9-10.) In so doing, however, they inexplicably disregard § 6-5-123, which expressly confers a right of action on individuals in public nuisance cases where special damage exists. Of course, it is plaintiffs' burden to prove "special damage" at trial; however, defendants' failure to acknowledge that special damage would authorize plaintiffs' public nuisance claims, and their suggestion that such claims are categorically barred for individuals by § 6-5-121, is disingenuous and serves only to obfuscate the relevant principles of law.

>     come forward with any evidence that DDT is a harmless chemical that can never
>     [require clean-up and decontamination by property owners] ..., the Motion for
>     Summary Judgment is **granted** as to the Twenty-Third Affirmative Defense.
>     That said, nothing herein forbids or impairs defendants' ability to argue at trial
>     that plaintiffs cannot prove injury from any DDT contamination by Ciba because
>     the concentrations found on their property are too small to [cause injury]."

*Fisher*, 2007 WL 2995525, at *23.[19]

Finally, plaintiffs seek summary judgment on the Twenty-Eighth Affirmative Defense, wherein defendants state that plaintiffs cannot recover for injuries "arising from alleged contamination of property belonging to others, or contamination of waterways owned by the State of Alabama or the United States of America." (Doc. 57, at 14.) Whatever ambiguities might exist in their initial pleading, plaintiffs have since made it exceedingly clear that they seek no recovery for contamination to anyone else's property or to public waterways. In that regard, plaintiffs have expressly represented to the Court that they "have no intentions of making any claims for injuries arising from contamination of property belonging to others or contamination of waterways owned by the State of Alabama or the United States of America." (Doc. 260, at 14-15.) Plaintiffs are bound by this unequivocal representation; therefore, the Twenty-Eighth Defense serves no useful purpose in this litigation, and plaintiffs' Motion will be **granted** as to it.

---

[19] As the Court has addressed elsewhere in the parties' deluge of summary judgment submissions, there is obviously a vigorous debate between the parties as to whether and to what extent clean-up of plaintiffs' properties is needed. Defendants argue that any need for clean-up should be pegged to human health risks, and that the presence of DDT at levels below those detrimental to human health does not warrant any award for clean-up. By contrast, plaintiffs' position is apparently that Ciba wrongfully caused this DDT to enter their property, that plaintiffs do not want DDT on their property, and that Ciba should have to pay the cost of removing it, irrespective of human health implications. Both sides will be allowed to make these arguments to the jury, which will then be tasked with determining what will compensate plaintiffs for the injuries received; provided, however, that the Court does not intend to allow this <u>property damage</u> trial to be sidetracked by extensive evidence of <u>human health</u> risks (or lack thereof). Defendants can make their human health showing to the extent it ties into their argument that there is no reason to clean up plaintiffs' homes (*i.e.*, that plaintiffs have no damages), but they are expected to do so in a concise manner that does not transform this trial into one about human health risks. The Court will not hesitate to sustain properly framed objections under Rules 402 and 403, Fed.R.Evid., to the extent that one side or the other exceeds these parameters.

**V.   Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Plaintiffs' Unopposed Motion for Leave to Exceed Page Limitation (doc. 261) is **granted**, and the Court will consider plaintiffs' Reply (doc. 260) as filed.

2. Plaintiffs' Motion for Partial Summary Judgment (doc. 219) is **granted in part**, and **denied in part**. The Motion is **granted** with respect to the following defenses set forth in defendants' Answers (docs. 57-60): Fourth Affirmative Defense (failure to prove nuisance); Tenth Affirmative Defense (OSHA hazard communication standard); Eleventh Affirmative Defense (res judicata / accord and satisfaction); Twenty-Third Affirmative Defense (harmless compounds incapable of causing property damage); Twenty-Eighth Defense (contamination of property belonging to others or public waterways); Thirty-First Defense (estoppel); and Thirty-Third Defense (payment and release). Summary judgment is granted in test plaintiffs' favor as to each of those affirmative defenses, and those defenses will not be joined as triable issues in the test plaintiffs' trial.[20] In all other respects, the Motion is **denied**.

DONE and ORDERED this 1st day of October, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[20] The parties' briefs largely do not distinguish between availability of these defenses against test plaintiffs' claims and availability of these defenses against non-test plaintiffs' claims. Absent briefing by the parties, the Court will not *sua sponte* address whether and to what extent this ruling should reach non-test plaintiffs' claims. That said, to the extent it becomes necessary in the future to litigate the availability of these affirmative defenses in Rule 56 proceedings for non-test plaintiffs, the Court expects counsel for all parties to emphasize what (if anything) is different about the non-test plaintiffs that might warrant a different ruling as to them, and simply to adopt all carry-over arguments from this round of briefing by incorporation, so as to spare the Court and opposing counsel from wading once again through the dense thicket of arguments made here, which was in itself largely an encore presentation of arguments previously articulated and resolved on summary judgment in *Fisher*.